UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL CLANCY, et al., <br><br> Plaintiffs, <br><br> v. <br><br> THE SALVATION ARMY, <br><br> Defendant. | No. 22 CV 1250 <br><br> Judge Manish S. Shah |

MEMORANDUM OPINION AND ORDER

Plaintiffs Michael Clancy, Stuart Love, and Merrick Mann worked at rehabilitation centers run by defendant The Salvation Army. Alleging that they were employed by defendant, plaintiffs bring claims for violations of the Fair Labor Standards Act, Illinois Minimum Wage Law, and Michigan Workforce Opportunity Wage Act. Under Rule 12(b)(6), defendant moves to dismiss the amended complaint. For the reasons that follow, the motion is denied.

I.  **Standard of Review**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). The complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing a motion to dismiss, a court must construe all factual allegations as true and draw all reasonable inferences in the plaintiffs' favor. *Sloan v. Am. Brain Tumor Ass'n*, 901 F.3d 891, 893 (7th Cir.

2018) (citing *Deppe v. NCAA*, 893 F.3d 498, 499 (7th Cir. 2018)). A court may take judicial notice of actions or filings made in other courts, but can take notice of findings of fact only if the facts are not subject to reasonable dispute. *Daniel v. Cook Cnty.*, 833 F.3d 728, 742 (7th Cir. 2016) (quoting *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1082 (7th Cir. 1997)).

**II.   Facts**

The Salvation Army ran residential adult rehabilitation programs across the country. [39] ¶ 1.[1] Each year, thousands of vulnerable people—the poor, those suffering from addiction or mental illness, and people with criminal backgrounds— enrolled in defendant's programs. *Id.* ¶¶ 1, 26.

Rehabilitation program participants were required to work, largely in support of the Salvation Army's thrift stores. [39] ¶¶ 2, 27. Under the direction and control of defendant, workers handled inventory, cleaned, loaded and unloaded trucks, operated heavy machinery, and drove or traveled on trucks. *Id.* ¶¶ 2, 29, 33, 35. The Salvation Army required participants to work at least forty hours per week in exchange for room, board, clothing, rehabilitative services, and nominal wages. *Id.* ¶¶ 27, 38, 42.[2] Workers understood and expected that, in exchange for their labor, the Salvation Army would provide them with these benefits and compensation. *Id.*

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. The facts are taken from the amended complaint. [39].

[2] Defendant paid rehabilitation workers a starting wage of $1 per week, and increased the amount each week, topping out at $25 per week. [39] ¶ 38.

¶¶ 27, 40. Participants who refused or were unable to work could be expelled from the program, and did not receive the promised benefits. *Id.* ¶¶ 36–38.

Plaintiffs' work for the Salvation Army didn't serve any educational program, and largely did not promote their rehabilitation. [39] ¶ 30. The Salvation Army's requirement that participants work at least forty hours per week left little time to focus on rehabilitation, and defendant didn't provide workers with training that would promote their future employment. *Id.* Program participants were required to live at the rehabilitation centers, and were reliant on the Salvation Army for food and shelter. *Id.* ¶ 42. Participants weren't typically charged a fee to participate, but had to give the Salvation Army their Supplemental Nutrition Assistance Program benefits. *Id.* ¶ 43. Workers generally left the program within 180 days. *Id.* ¶ 44.

There's an allegation that the labor performed by plaintiffs and other workers primarily benefitted the Salvation Army, which through its thrift stores competed with businesses that paid employees minimum wage or more. [39] ¶ 31. Defendant generated more that $598 million from its stores in 2019, and could not have competed in the thrift store market without the work of rehabilitation program participants. *Id.* ¶¶ 31–32. Without rehabilitation workers, the Salvation Army would have needed to hire workers and pay them in accordance with applicable wage laws. *Id.* ¶ 34.[3]

---

[3] In addition to rehabilitation program workers, the Salvation Army employed other individuals who performed the same duties as program participants, but were paid minimum and overtime wages. [39] ¶ 34.

Clancy, Love, and Mann participated in Salvation Army rehabilitation programs in Illinois, Missouri, and Michigan. [39] ¶¶ 18–20. While in the programs, plaintiffs worked at least eight hours per day, five days per week. *Id.* ¶¶ 18–20, 39. The Salvation Army paid plaintiffs a small amount of cash (from as low as $1 a week up to $21 per week). *Id.* ¶¶ 18–20. Plaintiffs allege that the Salvation Army willfully violated the FLSA (and Illinois and Michigan law) by failing to pay them minimum or overtime wages. *Id.* ¶¶ 46, 73–74, 107.

### III. Analysis

To state a claim for violations of the FLSA's minimum and overtime wage provisions, plaintiffs must allege that they were employees of and performed work for the Salvation Army. *See Berger v. Nat'l Collegiate Athletic Ass'n*, 843 F.3d 285, 290 (7th Cir. 2016) (citing *Melton v. Tippecanoe Cnty.*, 838 F.3d 814, 818 (7th Cir. 2016)). An allegation of an employment relationship is also a requirement for plaintiffs' state-law claims, and the parties agree that the analyses under Illinois and Michigan law are the same as under the FLSA. *See* [61-1] at 20–21; [70] at 13 n.7; *Callahan v. City of Chicago*, 78 F.Supp.3d 791, 821 (N.D. Ill. 2015), *aff'd*, 813 F.3d 658 (7th Cir. 2016); *Deschepper v. Midwest Wine and Spirits, Inc.*, 84 F.Supp.3d 767, 778 (N.D. Ill. 2015); *Allen v. Lincare Inc.*, CASE NO. 16-CV-11996, 2018 WL 352362, at *8 n.2 (E.D. Mich. Jan. 10, 2018) (citing *Dikker v. 5-Star Team Leasing*, 243 F.Supp.3d 844, 854 n.3 (W.D. Mich. 2017)); *Osterman v. Gen. R.V. Center, Inc.*, Case No. 19-10698, 2020 WL 6708873, at *2 (E.D. Mich. Nov. 16, 2020) (citations omitted).

The FLSA's relevant definitions are broad, circular, and not particularly helpful in identifying the limits of covered employment relationships. *See* 29 U.S.C. § 203; *Brant v. Schneider Nat'l, Inc.*, 43 F.4th 656, 664 (7th Cir. 2022). To decide whether a worker was an employee covered under the FLSA, courts look at the totality of the circumstances and assess the economic reality of the working relationship at issue. *Berger*, 843 F.3d at 290 (quoting *Vanskike v. Peters*, 974 F.2d 806, 808 (7th Cir. 1992)).

To understand the economic reality of various relationships, the Department of Labor and courts have developed multifactor tests. These include the Department's rule for deciding between an unpaid trainee and an employee, *see* U.S. Dep't of Labor, Wage & Hour Div., Fact Sheet #71, Internship Programs Under The Fair Labor Standards Act (Updated January 2018), https://www.dol.gov/agencies/whd/fact-sheets/71-flsa-internships, the Seventh Circuit's test to decide whether migrant workers were employees or independent contractors, *see Sec'y of Labor v. Lauritzen*, 835 F.2d 1529, 1534–38 (7th Cir. 1987), and the Second Circuit's standard for deciding whether interns were employees. *See Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 536–38 (2d Cir. 2016). None of these (or other) tests are exclusive or necessarily applicable to every case. Instead, the Seventh Circuit's approach is flexible, and courts should choose the most helpful guides to understanding the

economic reality presented by a given case. *See Berger*, 843 F.3d at 291; *Hollins v. Regency Corp.*, 867 F.3d 830, 835 (7th Cir. 2017).[4]

As the parties acknowledge, the Seventh Circuit has not decided how to analyze a relationship like the one in this case, when participants in a rehabilitation program performed work. But two Supreme Court cases offer a starting point.

In *Walling*, the Court found that trainees who received a few days of instruction at a railroad were not employees under the FLSA. *Walling v. Portland Terminal Co.*, 330 U.S. 148, 149, 153 (1947). The Court reasoned that the Act wasn't "intended to stamp all persons as employees who, without any express or implied compensation agreement, might work for their own advantage on the premises of another." *Id.* at 152. Similarly, the Court noted that the Act's broad definitions of employ and employee could not stretch to include "a person whose work serves only his own interest." *Id.* The court concluded that the trainees had provided no "immediate advantage" to the railroads, and were not employees. *Id.* at 153.

In *Alamo Foundation*, the Court reached the opposite conclusion about associates of a religious foundation who thought of themselves as volunteers and didn't believe they were owed a minimum wage. *Tony and Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 300–01 (1985). The Court found that the associates were entirely dependent on the foundation for long periods of time (years, in some cases),

---

[4] Tests like those from *Glatt* and *Lauritzen* are not strictly applied when they "fail to capture the true nature" of a working relationship. *Berger v. Nat'l Collegiate Athletic Ass'n*, 843 F.3d 285, 291 (7th Cir. 2016) (quoting *Vanskike v. Peters*, 974 F.2d 806, 809 (7th Cir. 1992)); *see Hollins v. Regency Corp.*, 867 F.3d 830, 835 (7th Cir. 2017). But these and other standards are useful points of reference in evaluating an alleged FLSA employment relationship.

and must have expected to receive in-kind benefits in exchange for their labor. *Id.* at 301. The associates were employees covered by the Act. *Id.* at 306.

*Walling*, *Alamo Foundation*, and other cases that address the limits of the FLSA's coverage agree that one important consideration is whether the worker/employee had any expectation of compensation. *See Walling*, 330 U.S. at 152; *Alamo Found.*, 471 U.S. at 301; *Berger v. Nat'l Collegiate Athletic Ass'n*, 843 F.3d 285, 293 (7th Cir. 2016); *Fochtman v. Hendren Plastics, Inc.*, 47 F.4th 638, 646 (8th Cir. 2022). A second inquiry relevant here is whether plaintiffs or the Salvation Army were the primary beneficiary of the relationship. *See Walling*, 330 U.S. at 152 (an employee cannot be one who works only to serve his own interest); *Vaughn v. Phoenix House New York Inc.*, 957 F.3d 141, 145–46 (2d Cir. 2020) (applying the seven-factor test from *Glatt* to decide this issue); *Fochtman*, 47 F.4th at 645 (gathering cases).[5] A

---

[5] Plaintiffs argue that the right question is whether the Salvation Army received an immediate advantage from their work, rather than who was the primary beneficiary of the relationship. *See* [70] at 16. Neither *Walling* nor *Alamo Foundation* establishes an immediate-advantage test. The Court in *Walling* noted that, when a purported employer didn't receive any immediate advantage from a relationship, workers weren't employees under the FLSA. *See Walling v. Portland Terminal Co.*, 330 U.S. 148, 153 (1947). But the Court discussed immediate advantage as part of the unchallenged facts of the case, and in its analysis drew a line between FLSA employment on the one hand, and uncovered work that "would most greatly benefit" the employee, on the other. *Id.* at 152–53. While the associates in *Alamo Foundation* likely provided an advantage to their employer, the Court did not discuss any advantage that the foundation gained, or who primarily benefitted from the relationship. *Tony and Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 292, 299–303 (1985). Courts that have encountered similar work arrangements have applied some version of a primary beneficiary test. *See Hollins v. Regency Corp.*, 867 F.3d 830, 836–37 (7th Cir. 2017) (comparing the benefits that an operator of cosmetology schools received from student labor with the benefits that the student received); *Fochtman v. Hendren Plastics, Inc.*, 47 F.4th 638, 645 (8th Cir. 2022) (gathering cases). The cases cited by plaintiffs don't disagree with this approach. *See Earl v. Bell House, LLC*, 8:20-CV-129, 2022 WL 394731, at *3 (D. Neb. Feb. 9, 2022) (citation omitted) (considering whether a worker's tasks "served his own personal or rehabilitative goals" or "primarily the Defendants' business interests"); *Perez*

7

third question that may shed light on whether plaintiffs were employed by the Salvation Army is how dependent the relationship was. *See Brant v. Schneider Nat'l, Inc.*, 43 F.4th 656, 665 (7th Cir. 2022) (quoting *Simpkins v. DuPage Hous. Auth.*, 893 F.3d 962, 964 (7th Cir. 2018)); *Alamo Found.*, 471 U.S. at 301. Fourth and finally, the purposes of the FLSA—achieving minimum labor standards and preventing unfair competition—may be useful in deciding whether a given relationship falls within the scope of the Act. *See* 29 U.S.C. § 202; *Vanskike v. Peters*, 974 F.2d 806, 810 (7th Cir. 1992).

At this stage of the case, it's reasonable to infer that all four of these considerations point in favor of a covered employment relationship. According to the complaint, Clancy, Love, and Mann expected to be compensated, an allegation supported by the long hours plaintiffs worked, the nature of their work, that the benefits they received were conditioned on work, how essential their work was for defendant's business, and plaintiffs' reliance on the Salvation Army. *See* [39] ¶¶ 18–20, 27–29, 31–34.[6] Plaintiffs claim that the Salvation Army was the primary

---

*v. TLC Residential, Inc.*, No. C 15-02776 WHA, 2016 WL 6143190, at *3 (N.D. Cal. Oct. 21, 2016) (comparing which party benefitted more from a relationship); *Archie v. Grand Cent. P'ship, Inc.*, 997 F.Supp. 504, 535 (S.D.N.Y. 1998) (examining whether a defendant received an immediate advantage from a relationship but also assessing which party benefitted more). While plaintiffs are correct that the Seventh Circuit has not adopted the primary beneficiary test in a case like this one, comparing the benefits that each party received is a useful guide to the economic reality of a case (like this one) when both parties may have gained. An immediate advantage gained by the alleged employer is not a singular, dispositive answer to the economic reality of a relationship.

[6] While the complaint plausibly alleges that plaintiffs expected to be compensated, the fact that Clancy, Love, and Mann were required to turn over SNAP benefits to the Salvation Army points in the opposite direction, suggesting that this wasn't an exchange of work for in-kind benefits. *See* [39] ¶ 43; *Williams v. Strickland*, 87 F.3d 1064, 1067 (9th Cir. 1996).

8

beneficiary of their relationship, and back that allegation up with details about how essential and beneficial their work was for defendant, the minimal value and effectiveness of the rehabilitation services they received, and the way in which their work prevented them from pursuing rehabilitation. *See* [39] ¶¶ 30–34.[7] This case doesn't involve precisely the same kind of total, long-lasting dependency that was at issue in *Alamo Foundation. See* 471 U.S. at 301. But at this preliminary stage of the case, this factor too cuts in favor of an employment relationship because plaintiffs were reliant on defendant for food and shelter for six months on average. [39] ¶¶ 42–44. That plaintiffs worked long hours without minimal labor protections and potentially gave the Salvation Army an unfair advantage in the thrift store market suggests that, if plaintiffs can prove their case, recognizing an employment relationship here would be consistent with the purposes of the Act. *See* 29 U.S.C. § 202.[8]

---

[7] It's reasonable to infer that the benefits the Salvation Army received from plaintiffs' labor were more than incidental. *Cf. Hollins v. Regency Corp.*, 144 F.Supp.3d 990, 1006–07 (N.D. Ill. 2015); *Solis v. Laurelbrook Sanitarium & Sch., Inc.*, 642 F.3d 518, 521 (6th Cir. 2011). The complaint says that plaintiffs benefitted from the relationship by receiving room, board, clothing, rehabilitation services, and nominal wages. *See* [39] ¶ 27; *see also Vaughn v. Phoenix House New York Inc.*, 957 F.3d 141, 146 (2d Cir. 2020). At this point, however, there's a plausible allegation that defendant benefitted more from the arrangement.

[8] The decisions cited by defendant are distinguishable or don't disagree. Cases decided on a motion for preliminary injunction, summary judgment, or otherwise after the benefit of discovery are persuasive in elaborating the correct standard for alleging an employment relationship under the FLSA, but are not helpful in assessing the sufficiency of the complaint in this case. *See Armento v. Asheville Buncombe Cmty. Christian Ministry, Inc.*, 856 Fed. App'x 445, 451–56 (4th Cir. 2021); *Hollins v. Regency Corp.*, 867 F.3d 830, 834–37 (7th Cir. 2017); *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 533–38 (2d Cir. 2016); *Schumann v. Collier Anesthesia, P.A.*, 803 F.3d 1199, 1207–15 (11th Cir. 2015); *Isaacson v. Penn Cmty. Services, Inc.*, 450 F.2d 1306, 1308–11 (4th Cir. 1971); *Danneskjold v. Hausrath*, 82 F.3d 37, 40–44 (2d Cir. 1996); *Acosta v. Cathedral Buffet, Inc.*, 887 F.3d 761, 765–68 (6th Cir. 2018);

9

The Salvation Army wants to look beyond the complaint, and especially to the facts in *Williams*, when the Ninth Circuit confronted a similar question about a different worker at one of defendant's rehabilitation programs in California. *See Williams v. Strickland*, 87 F.3d 1064 (9th Cir. 1996). Courts are permitted to take judicial notice of public documents, including judicial decisions. *See Fosnight v. Jones*, 41 F.4th 916, 922 (7th Cir. 2022) (citations omitted). But defendant wants to bring in the facts that underlie the decision in *Williams*, not just the decision itself. *See* [61-1] at 8–9, 15–17. Those facts are subject to reasonable dispute, and cannot be considered here. *See Daniel v. Cook Cnty.*, 833 F.3d 728, 742 (7th Cir. 2016) (citations omitted). Under Rule 12(b)(6), I accept as true what plaintiffs have alleged in this case and draw all reasonable inferences in their favor. *See Fosnight*, 41 F.4th at 921 (citation omitted). What matters at this point is what the complaint says, not the facts that

---

*Steelman v. Hirsch*, 473 F.3d 124, 127–32 (4th Cir. 2007); *Solis v. Laurelbrook Sanitarium and Sch., Inc.*, 642 F.3d 518, 521–32 (Sixth Cir. 2011). Rulings about prisoners and detainees are distinguishable, because workers in those settings are taken out of the national economy and have their needs met, whereas the plaintiffs in this case have alleged a free-labor situation. *See Vanskike v. Peters*, 974 F.2d 806, 807–13 (7th Cir. 1992); *Harker v. State Use Indus.*, 990 F.2d 131, 133–36 (4th Cir. 1993); *Alvarado Guevara v. I.N.S.*, 902 F.2d 394, 395–97 (5th Cir. 1990); *Ndambi v. CoreCivic, Inc.*, 990 F.3d 369, 372–75 (4th Cir. 2021). The other cases cited by defendant are also distinguishable. *See Vaughn v. Phoenix House New York Inc.*, 957 F.3d 141, 146 (2d Cir. 2020) (complaint failed to allege an expectation of compensation and workers received significant benefits, including an opportunity to avoid a jail sentence); *Velarde v. GW GJ, Inc.*, 914 F.3d 779, 786–79 n.9 (2d Cir. 2019) (student received significant benefits including opportunity to complete a requirement for a license and complaint failed to allege expectation of compensation); *Doyle v. City of New York*, 91 F.Supp.3d 480, 487 (S.D.N.Y. 2015) (workers who performed community service intended to secure adjournment of criminal charges, not secure compensation); *Freeman v. Key Largo Volunteer Fire and Rescue Dep't, Inc.*, 494 Fed. App'x 940, 943–44 (11th Cir. 2012) (complaint alleged a clear distinction between volunteers and employees and failed to allege that worker was hired as employee).

10

were before other courts or what the Salvation Army may hope to prove later in the case.[9]

Considering the economic reality of the parties' relationship, there's a plausible allegation that Clancy, Love, and Mann were employed by the Salvation Army. Plaintiffs also adequately allege willful conduct. *See* [39] ¶¶ 7, 46, 73–74, 107. Willfulness is relevant to the statute of limitations for claims under the FLSA. *See* 29 U.S.C. § 255(a). Because the statute of limitations is an affirmative defense and evidence of willfulness (if any) is likely to be in defendant's possession, conclusory allegations of willful behavior are enough for now. *See* Fed. R. Civ. P. 8(c)(1); *Diaz v. E&K Cleaners, Inc.*, No. 16-CV-07952, 2018 WL 439120, at *4 (N.D. Ill. Jan. 16, 2018); *Guon v. John Q. Cook*, M.D. LLC, No. 16 C 3840, 2016 WL 6524948, at *3 (N.D. Ill. Nov. 3, 2016).[10] After discovery, however, plaintiffs must be prepared to offer evidence of a willful violation, which may be difficult to find given the flexible standard for what constitutes an employment relationship in the Seventh Circuit and the fact that persuasive authority (including *Williams*) supports the proposition that work performed as part of rehabilitation programming is not employment under the Act.

---

[9] The Salvation Army also asks that the court take notice of similar complaints filed in three other district courts. *See* [72] at 11 n.4. Even if the facts in those cases are similar to this one, however, that doesn't mean that plaintiffs have admitted that the Salvation Army runs identical programs nationwide, or somehow authorize the court to look to the facts of other disputes involving the Salvation Army. This case isn't like *Watkins*, because the complaints that defendant wants the court to take notice of weren't filed by Clancy, Love, and Mann. *Cf. Watkins v. United States*, 854 F.3d 947, 950 (7th Cir. 2017).

[10] *McLaughlin* discussed the standard for proving willful conduct, and didn't address what is required to allege willfulness. *See McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). Insofar as *Butler* stands for the proposition that a conclusory allegation of willfulness is never enough to survive a motion to dismiss, I disagree for the reasons discussed above. *Butler v. East Lake Mgmt. Grp., Inc.*, No. 10 C 6652, 2013 WL 2112032, at *3 (N.D. Ill. May 15, 2013).

## IV. Conclusion

Defendant's motion to dismiss, [61]; [63], is denied. Defendant shall answer the complaint by February 21, 2023. The stay on discovery is lifted. The parties shall file a status report on February 24, 2023, with a proposed case schedule.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: January 31, 2023