**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MICHAEL CLANCY, STUART LOVE, THOMAS BRYANT, JAMES PETERS, and SAMUEL PATTON, on behalf of themselves and all others similarly situated, | |
| Plaintiffs, | Case No.: 1:22–cv–01250 |
| | JURY TRIAL DEMANDED |
| v. | |
| THE SALVATION ARMY, an Illinois nonprofit corporation, | |
| Defendant. | |

**SECOND AMENDED CLASS AND COLLECTIVE ACTION**

Plaintiffs Michael Clancy, Stuart Love, Thomas Bryant, James Peters, and Samuel Patton ("Plaintiffs"), by and through the undersigned attorneys, bring this action on behalf of themselves and the collective as defined below, against Defendant The Salvation Army ("Defendant") for failure to pay minimum wage as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* Plaintiffs also bring this action on behalf of themselves and classes of similarly situated workers against Defendant for violations of select state labor laws. Plaintiffs Clancy, Love, and Bryant additionally each bring this action on behalf of themselves against Defendant for failure to pay overtime as required by the FLSA and select state laws. Plaintiffs allege as follows:

**INTRODUCTION**

1.     There are approximately 120 Salvation Army residential adult rehabilitation centers and adult rehabilitation programs ("ARCs") across the United States, approximately 21

of which are located in the Salvation Army Central Territory and operated by Defendant. Thousands of vulnerable individuals ("ARC workers")—people who are unhoused or marginally housed, who are very poor, who have drug or alcohol addiction problems, who are entangled in the criminal justice system, and/or who suffer from mental illness—enroll in Defendant's ARCs annually.

2.    The cornerstone of all of Defendant's ARCs is that all ARC workers must perform at least forty hours per week, and often more, of difficult work for Defendant. Most of the work is performed in direct support of Defendant's thrift stores, retail establishments that are in direct competition with other such enterprises selling used goods. Typical tasks performed by the ARC workers include sorting donated clothing, hanging clothing on hangers, putting price tags on the clothing and other goods, sorting and cleaning bric-a-brac, testing electronics, rehabilitating furniture, and loading and unloading trucks with donated goods. All the work performed is suffered or permitted by Defendant and is under the direction and control of employees of Defendant.

3.    In exchange for the ARC workers' full-time labor, Defendant pays wages to the ARC workers that start as low as $1 per week and may increase each week up to a maximum of no more than approximately $25 per week, well below the minimum wage required by the FLSA and applicable state laws. As further compensation for the ARC workers' labor, Defendant provides ARC workers with dorm-like sleeping arrangements, board in the form of food that is at least in part donated by third parties or purchased with ARC workers' SNAP benefits, clothing that has been donated and would otherwise be sold in Defendant's thrift stores, and rudimentary rehabilitative services, the value of which is far below the required minimum wage. ARC workers who complete the program often leave the ARC penniless and jobless, unable to survive

2

economically in their communities.

4.      People applying to the ARCs who are unable to perform work for Defendant are ineligible to enroll in the ARCs.  Defendant typically expels from the program any ARC workers who, after being admitted to the program, become unable or unwilling to work, including if they become unable to work as a result of an injury sustained performing work for Defendant or because they fall ill.

5.      If ARC workers did not provide labor for Defendant, Defendant would have to pay other workers from the community to complete the tasks it assigns to ARC workers. Defendant employs other individuals to work side-by-side with ARC workers performing substantially the same duties for wages in compliance with the FLSA and applicable state requirements.

6.      Because ARC workers are suffered or permitted to perform tasks for Defendant's benefit, under the direction and control of Defendant's employees, and with the expectation of receiving compensation from Defendant for their labor, Plaintiffs and all others similarly situated are Defendant's employees under the FLSA and applicable state laws.  Nevertheless, Defendant has and at all relevant times has had a uniform policy or practice of failing to treat its ARC workers as employees.  It is well established under the FLSA and applicable state laws that absent a specific exemption workers cannot waive their right to be compensated at the rates set forth by law.  As a result, Defendant has and at all relevant times has had a policy or practice, in violation of the FLSA and applicable state laws, of failing to pay Plaintiffs and all those similarly situated workers minimum wage for all hours worked.  Similarly, Defendant has and at all relevant times has had a policy or practice, in violation of the applicable state laws, of failing to provide wage statements to Plaintiffs and all those similarly situated workers.  Defendant also

failed to pay overtime compensation to Plaintiffs Love, Clancy, and Bryant for all hours worked in excess of forty hours per week, in violation of the FLSA and applicable state laws. These systemic violations have been, and are, occurring despite Defendant recently publicly acknowledging the importance of the minimum wage and overtime protections of the FLSA, particularly for the working poor, and stating its intention to comply with the minimum wage and overtime provisions of the FLSA for its lay employees.

7.      Defendant at all relevant times knew that Plaintiffs and all those similarly situated workers were suffered and permitted to work for Defendant but were not paid wages at the required rate for their work, and willfully and intentionally engaged in a widespread policy or practice of failing and refusing to fully compensate Plaintiffs and all those similarly situated workers. *See* 29 U.S.C. § 255.

8.      Plaintiffs bring this action for violations of the FLSA as a collective action, pursuant to 29 U.S.C. § 216(b), on behalf of the following proposed collective (the "FLSA Collective"):

> All persons who, between March 9, 2019 and the date of final judgment: (1) are, were, or will be enrolled in any Salvation Army Adult Rehabilitation Center or other programs operated by Defendant with similar work requirements ("ARC Program")—including, but not limited to, Alcohol Rehabilitation Programs, Adult Rehabilitation Programs, and Corps Salvage and Rehabilitation Centers; (2) did not or will not enroll in the ARC Program to comply with a court order or condition of probation or parole; (3) perform, performed, or will perform work for Defendant; and (4) are, were, or will be paid less than the applicable federal minimum wage.

9.      Plaintiffs Bryant and Peters, who enrolled in ARCs in Michigan, Plaintiff Clancy, who enrolled in an ARC in Illinois, and Plaintiff Patton, who enrolled in an ARC in Wisconsin, also bring this action on behalf of themselves and the classes defined below for violations of those states' applicable labor laws. *See infra* ¶¶ 78-108.

10.      Plaintiffs Clancy, Love, and Bryant each bring this action on behalf of themselves

individually for failure to pay overtime as required by the FLSA and applicable state laws.

11.     Defendant is liable for its violations of federal and applicable state laws.

12.     Accordingly, as set forth below, Plaintiffs seek unpaid compensation, penalties, liquidated damages,  pre- and post-judgment interest, and attorneys' fees and costs pursuant to the FLSA and applicable state laws on behalf of themselves, others similarly situated, and the state classes they seek to represent.

## JURISDICTION

13.     This Court has jurisdiction over the FLSA claims in Count I and V pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

14.     This Court has general jurisdiction over Defendant because Defendant is incorporated and has its principal place of business in Hoffman Estates, Illinois.

15.     This Court has jurisdiction over Counts II, III, IV, VI, and VII pursuant to 28 U.S.C. § 1367(a), as Plaintiffs' state law claims form part of the same case or controversy as Plaintiffs' FLSA claims.

16.     The action is properly before this Court and this Court has jurisdiction over Counts II, III, and IV pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d).  This is a civil class action that was commenced after February 18, 2005, in which the matter in controversy as to Counts II, III, and IV exceeds $5,000,000, exclusive of interest and costs. Plaintiff Bryant is a citizen of Ohio, Plaintiff Peters is a citizen of Michigan, and Plaintiff Patton is a citizen of Wisconsin, and thus at least one member of the classes bringing Counts II, III, and IV is a citizen of a different state than Defendant.  Plaintiffs Clancy, Bryant, Peters, and Patton bring Counts II, III, and IV on behalf of statewide classes which, on information and belief, consist of more than 100 class members in the aggregate.  Upon information and belief, none of

the exemptions to jurisdiction found in 28 U.S.C. §§ 1332(d)(3), (d)(4)(A), or (d)(4)(B) apply to this action.

<strong>VENUE</strong>

17.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant resides in this District and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.  Accordingly, Defendant conducted and continues to conduct substantial business in this District, a substantial part of the transactions at issue took place in this District, and Defendant's liability arose, in part, in this District.

<strong>PARTIES</strong>

**A.  Plaintiffs**

18.     Plaintiff Michael Clancy is an adult resident of Illinois.  Plaintiff Clancy most recently entered the Salvation Army ARC on Des Plaines Street in Chicago, Illinois on or about July 29, 2019.  He completed the program six months later, on or about January 29, 2020. During the entire period that he was a participant in the ARC, Plaintiff Clancy was required to work for Defendant, performing tasks including working in a warehouse, sorting and hanging clothing; loading donated furniture in and out of trucks alongside drivers who Plaintiff Clancy understood to be Salvation Army's acknowledged employees; and working in a security role at the ARC facility, answering phones and patrolling the premises.  He worked at least 8 hours a day, 5 days a week, in each job he performed and worked additional hours on the weekend from time to time in addition to 40 hours during the week.  Plaintiff Clancy was never paid the FLSA required minimum wage, the minimum wage required by state and local law, nor overtime as required by the FLSA and state and local law.  Instead, his weekly wages started at $1 per week and incrementally increased until he received wages of $21 per week, at which point wage

increases stopped. Plaintiff Clancy was suffered and permitted to work by Defendant, and his

work was under the direction and control of Defendant. Plaintiff Clancy qualified as an

employee of Defendant under the FLSA, 29 U.S.C. § 203(e)(1), and 820 ILCS 105/3(d).

19. Plaintiff Stuart Love is an adult resident of Indiana. Plaintiff Love entered the

Defendant's Salvation Army ARC in Kansas City, Missouri in November 2019 and completed

the program in May 2020 before Plaintiff Love re-entered the program in January 2021 and

concluded the program in April 2021. During the entire period that he was a resident in the

ARC, Plaintiff Love was required to work for Defendant, performing tasks that include sorting

donated clothes and placing them on a hanger in the warehouse for sale in the Defendant's store.

Plaintiff Love also sorted an array of donations at the Defendant's store, including clothing,

electronics, furniture, and household items. He worked at least 8 hours a day, 5 days a week, in

each job he performed and worked additional hours on the weekend from time to time in addition

to 40 hours during the week. Plaintiff Love was never paid the FLSA required minimum wage,

or overtime as required by the FLSA. Instead, his weekly wages started at $3 per week and

incrementally increased until his wages were capped at $21 per week. Plaintiff Love was

suffered and permitted to work by Defendant and his work was under the direction and control of

Defendant. Plaintiff Love qualified as an employee of Defendant under the FLSA, 29 U.S.C.

§ 203(e)(1).

20. Plaintiff Thomas Bryant is an adult resident of Ohio. Plaintiff Bryant entered the

Salvation Army ARC in Grand Rapids, Michigan in approximately June 2019 and left the

program in approximately January or February 2020. He later entered the Salvation Army ARC

in Grand Rapids, Michigan for approximately three days in April 2020. Plaintiff Bryant was a

participant in Salvation Army ARCs prior to the limitations period and in locations outside the

Central Territory.  During the entire period that he was a participant in the ARC, Plaintiff Bryant was required to work for Defendant, performing tasks that included working in the warehouse, loading and unloading trucks, and hanging and sorting donated clothing; doing security and janitorial work at the ARC; picking up donations in Salvation Army trucks; and testing donated electronics to prepare them for sale.  He worked at least 8 hours a day, 5 days a week, in each job he performed and worked additional hours in the evenings and on weekends from time to time in addition to his regular 40 hours per week schedule.  Plaintiff Bryant was never paid the FLSA required minimum wage, the minimum wage required by state and local law, nor overtime as required by the FLSA and state and local law.  Instead, his weekly wages started at $3 per week and incrementally increased until he received wages of $25 per week, at which point wage increases stopped.  Plaintiff Bryant was suffered and permitted to work by Defendant, and his work was under the direction and control of Defendant.  Plaintiff Bryant qualified as an employee of Defendant under the FLSA, 29 U.S.C. § 203(e)(1), and M.C.L. § 408.412(c).

21.     Plaintiff James Peters is an adult resident of Michigan.  Plaintiff Peters entered the Salvation Army ARC in Detroit, Michigan in approximately January 2019 and left the program in approximately September 2019.  During the entire period that he was a participant in the ARC, Plaintiff Peters was required to work for Defendant, performing tasks including working at a Salvation Army thrift store, unloading donated clothing and shoes from large bins onto tables to be sorted, and working in a security role at the ARC.  He worked at least 8 hours a day, 5 days a week, in each job he performed.  Plaintiff Peters was never paid the FLSA required minimum wage or the minimum wage required by state and local law.  Instead, his weekly wages started at $1 per week and incrementally increased until he received wages of $21 per week, at which point wage increases stopped.  Plaintiff Peters was suffered and permitted to work by Defendant, and

8

his work was under the direction and control of Defendant. Plaintiff Peters qualified as an employee of Defendant under the FLSA, 29 U.S.C. § 203(e)(1), and M.C.L. § 408.412(c).

22.     Plaintiff Samuel Patton is an adult resident of Wisconsin. Plaintiff Patton entered the Salvation Army ARC in Milwaukee, Wisconsin in approximately July 2022 and left the program on approximately March 15, 2023. During the entire period that he was a participant in the ARC, Plaintiff Patton was required to work for Defendant, performing tasks including sorting donated clothing and other items. He worked at least 8 hours a day, 5 days a week, in each job he performed. Plaintiff Patton was never paid the FLSA required minimum wage or the minimum wage required by state and local law. Instead, his weekly wages started at $3 in cash and $2 worth of canteen cards per week, and incrementally increased until he received wages of $21 in cash and $2 worth of canteen cards per week, at which point wage increases stopped. Plaintiff Patton was suffered and permitted to work by Defendant, and his work was under the direction and control of Defendant. Plaintiff Patton qualified as an employee of Defendant under the FLSA, 29 U.S.C. § 203(e)(1), and Wis. Stat. §§ 104.01(2) and 109.01(1r).

**B.     Defendant**

23.     Defendant is a 501(c)(3) organization incorporated in Illinois, with its headquarters located at 5550 Prairie Stone Parkway, Hoffman Estates, Illinois 60192.

24.     The Salvation Army National Corporation conducts its operations in the United States through four administrative territories: Eastern, Southern, Central, and Western. Each territory is separately incorporated, has its own territorial commander serving as leader of the territory, and oversees programs and activities within its own designated geographic areas. Defendant is responsible for the Central Territory, which consists of Illinois, Indiana, Iowa, Kansas, Michigan, Minnesota, Missouri, Nebraska, North Dakota, South Dakota, and Wisconsin.

25.     Defendant is, and at all relevant times has been, an employer within the meaning of 29 U.S.C. §§ 203(d) and 203(g), as well as applicable state laws.

26.     Defendant is, and at all relevant times has been, an enterprise within the meaning of 29 U.S.C. § 203(r)(1).

27.     At all relevant times, Plaintiffs were Defendant's employees engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 203(s)(1), 206, and 207.

## FACTUAL ALLEGATIONS

28.     Thousands of individuals enroll in Defendant's ARC programs annually, often because they are poor, unhoused, sick, suffering from a substance use disorder, or simply have nowhere else to go.

29.     Defendant requires that, to enroll in and remain at an ARC, and in exchange for room, board, clothing, rehabilitative services, and nominal wages—the value of which is far below the required minimum wage—all ARC workers must perform assigned tasks for Defendant for at least forty hours per week, and frequently more.  ARC workers understand and expect that, in exchange for their labor, The Salvation Army will provide them with those benefits and compensation.  The Salvation Army touts the work requirement on its website, explaining that a person cannot enroll in an ARC program if he or she is not "[a]ble to perform a work therapy assignment for eight hours a day."

30.     Defendant generally requires every ARC worker to complete an intake with Defendant before enrolling in the program.  Among other things, applicants may be asked to describe their work histories and any health or physical problems which might keep them from working.  Applicants must be able to work at least five days or forty hours per week.

10

31.     Once enrolled in the program, ARC workers, including Plaintiffs, perform tasks that are often physically grueling and sometimes dangerous.  Such tasks include loading, unloading, and hauling heavy furniture, home appliances, and other donations from trucks; sorting through mountains of donated clothing and other goods; cleaning, testing, and repairing donated goods; operating heavy machinery such as balers in large warehouses; driving or traveling on trucks to pick up and drop off donated goods; and cleaning, organizing, and maintaining Defendant's thrift stores.

32.     The jobs performed by ARC workers are not in furtherance of any educational program and do not primarily further ARC workers' rehabilitation.  In fact, Defendant requires ARC workers to work so many hours during the week that it leaves little time for the ARC workers to focus on rehabilitation. Moreover, Defendant does not provide ARC workers with job or skills training, nor any other training that would further ARC workers' employment once they leave the program.  Some ARC workers enter the ARCs with skilled training and experience and long histories of gainful employment.  Defendant does not provide any meaningful job placement assistance for ARC workers leaving the ARC.

33.     The jobs performed by ARC workers, including the jobs performed by Plaintiffs, directly, substantially, and primarily benefit and are essential to the operation of Defendant's multi-million dollar commercial thrift store operations.  The ARC workers, including Plaintiffs, perform tasks assigned to them by Defendant and are under Defendant's direction and control while performing work.  Defendant's thrift stores, retail establishments that compete for business with other commercial enterprises selling used goods, could not operate without the labor of ARC workers.  The ARC workers' labor for Defendant enables Defendant to sell goods in commerce at Defendant's thrift stores, which compete for customers with other thrift stores that

11

pay minimum wage or more.

34.     As of 2020, there were more than 1,000 Salvation Army branded thrift stores across the country.  Defendant's thrift stores generate millions of dollars in annual revenue for Defendant.  In 2019, The Salvation Army National Corporation reportedly generated $598,449,000 in revenue from sales at these thrift stores.

35.     Defendant also benefits from the jobs it requires some ARC workers to perform inside the ARCs themselves, like cleaning the common areas, kitchen work and menial administrative and clerical tasks.

36.     If Defendant did not receive the benefit of ARC workers' labor, Defendant would have to pay workers in compliance with the FLSA and state minimum wage laws to perform this work.  Some of Defendant's advertisements for paid positions at its ARCs describe job responsibilities, like sorting donations, tagging merchandise, and cleaning furniture donations, that are substantially the same as jobs performed by ARC workers.  Indeed, Defendant employs other individuals from the community to work side-by-side with ARC workers performing substantially the same duties.  Unlike ARC workers, Defendant pays these other employees market-rate wages that meet or exceed federal and state minimum wage requirements.

37.     Defendant controls all aspects of ARC workers' job assignments, including, but not limited to, the task each ARC worker must perform; the days of the week on which ARC workers must perform assigned tasks; the start and end time for shifts; the work location; the job duties for each position; the manner in which ARC workers are required to perform job duties; standards of performance; the rate of pay (or lack thereof) for each position; the training, if any, provided to ARC workers regarding the work they are required to perform; and all other working conditions.  Jobs are assigned and overseen by supervisors who are Defendant's fully paid

employees.

38.     An ARC worker's refusal or inability to work is grounds for Defendant to expel the worker from the ARC, even if the worker follows all other program rules.  Defendant routinely expels workers from its ARCs if they become unable to perform assigned tasks because of illness or even injury suffered while performing tasks for Defendant.

39.     ARC workers who miss scheduled shifts, even for legitimate reasons like illness or injury, typically are required to make up those hours at a later date.

40.     The policies or practices for the ARCs provide that if ARC workers perform their assigned jobs for Defendant and abide by other program rules, they will be provided with food, clothing, shelter, rehabilitative services, and wages—sometimes in the form of "canteen cards" redeemable only at Defendant's canteen and a meager amount of money, paid on an escalating scale.  Defendant typically pays ARC workers approximately $1 per week for their work when they begin, with their wages to increase by $1 each week, before topping out at a maximum of no more than approximately $25 per week as they participate in Defendant's work program. Defendant does not provide ARC workers with wage statements.  The policies or practices for the ARCs also provide that if ARC workers are unable or unwilling to perform assigned tasks, they will not receive these benefits as they will become ineligible to remain in the program.

41.     Defendant required Plaintiffs Love, Clancy, and Bryant to work more than forty hours per week.  Yet Defendant did not pay them overtime wages.

42.     Notwithstanding the significant benefits Defendant derives from jobs performed by ARC workers, and the ARC workers' expectation that they will be compensated for their labor, Defendant maintains, and for many years has maintained, a uniform policy of unlawfully failing to treat ARC workers as employees or pay them minimum wages.

43.     The policies or practices described herein are consistent across every ARC operated by Defendant.  Every ARC worker must perform their assigned tasks for at least forty hours per week as a condition of remaining in the program.  Defendant does not pay any ARC worker minimum wage for all hours worked.

44.     Defendant permits ARC workers to select for their personal use a limited number of clothing items from those donated to the Salvation Army.  ARC workers must live on-site, typically in assigned sleeping areas and dormitory settings with shared showers, toilets, and sinks.  While enrolled in an ARC program, ARC workers are reliant on Defendant for food and shelter.

45.     Although workers typically are not charged a fee to participate in the ARC programs, Defendant requires them to relinquish to Defendant SNAP benefits they are already receiving or to sign up for SNAP benefits if they are eligible and have not already enrolled and then turn over the benefits to Defendant.

46.     ARC workers generally stop performing jobs for Defendant in ARC programs when they complete Defendant's program (i.e., "graduate") (typically after 180 days), leave voluntarily, or are expelled.  The ARCs provide no meaningful job placement services for those leaving the program.  Upon information and belief, only a small percentage of workers successfully complete Defendant's ARC programs.  Many leave or are expelled from the program prior to completion.  Some are required to stay longer than 180 days as discipline for supposed infractions of ARC rules.

47.     At all relevant times, Defendant was aware that ARC workers were paid no more than a few dollars per week despite working at least forty hours.

48.     Defendant willfully denied Plaintiffs and all those similarly situated minimum

wages for all time worked.

49.     By failing to treat Plaintiffs and all those similarly situated as employees and
failing to pay minimum wage, Defendant has sought to avoid various duties and obligations
owed to employees under the FLSA, as well as the labor laws of Illinois, Michigan, and
Wisconsin.  Through this action, Plaintiffs challenge Defendant's unlawful policy of failing to
satisfy its duty to pay proper wages to ARC workers as well as comply with other provisions of
select state labor laws.

## COLLECTIVE ACTION ALLEGATIONS

50.     Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) on behalf of themselves
and the proposed FLSA Collective, defined as:

> All persons who, between March 9, 2019 and the date of final judgment: (1) are,
> were, or will be enrolled in any Salvation Army Adult Rehabilitation Center or
> other programs operated by Defendant with similar work requirements ("ARC
> Program")—including, but not limited to, Alcohol Rehabilitation Programs, Adult
> Rehabilitation Programs, and Corps Salvage and Rehabilitation Centers; (2) did
> not or will not enroll in the ARC Program to comply with a court order or
> condition of probation or parole; (3) perform, performed, or will perform work for
> Defendant; and (4) are, were, or will be paid less than the applicable federal
> minimum wage.

51.     Plaintiffs and all members of the proposed FLSA Collective are similarly situated.
They were subject to substantially similar job requirements, pay provisions, and a common
policy or practice that required or permitted them to perform work for the benefit and at the
direction of Defendant without receiving proper wages.

52.     Plaintiffs estimate that there are thousands of similarly situated current and former
workers in Defendant's ARC programs whose rights to federal minimum wages are, were, and
will be violated by Defendant.

53.     Defendant knew that Plaintiffs and the proposed FLSA Collective performed
work that required them to be compensated at the federal minimum wage.  Defendant willfully

and intentionally failed to properly compensate these individuals as required by the FLSA.

54.     Defendant is liable under the FLSA for failing to properly compensate Plaintiffs and the proposed FLSA Collective, and as such, notice should be sent to the FLSA Collective. There are numerous similarly situated current and former workers in Defendant's ARCs who have been denied proper minimum wage in violation of the FLSA who would benefit from the issuance of Court-supervised notice of this lawsuit and the opportunity to join.

55.     Those similarly-situated employees are known to Defendant and are readily identifiable through its records.

56.     Plaintiffs and members of the proposed FLSA Collective should therefore be permitted to pursue their claims collectively, pursuant to 29 U.S.C. § 216(b).

57.     A collective action will provide the most efficient mechanism for adjudicating the claims of Plaintiffs and the members of the proposed FLSA Collective.

58.     Plaintiffs request that they be permitted to serve as representatives for those who consent to participate in this action and that the action be granted collective action status pursuant to 29 U.S.C. § 216(b).

## RULE 23 CLASS ACTION ALLEGATIONS

59.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs seek to certify the following classes:

        a.      Michigan Class: Plaintiffs Bryant and Peters seek to bring Count III below on behalf of themselves and all persons who, between March 9, 2019 and the date of final judgment: (1) are, were, or will be enrolled in any Salvation Army Adult Rehabilitation Center or other programs operated by Defendant with similar work requirements in Michigan ("ARC Program")—including, but not limited to, Alcohol Rehabilitation Programs, Adult Rehabilitation

16

Programs, and Corps Salvage and Rehabilitation Centers; (2) did not or will not enroll in the ARC Program to comply with a court order or condition of probation or parole; (3) perform, performed, or will perform work for Defendant; and (4) were, are, or will be paid less than the applicable Michigan minimum wage.

        b.    <u>Illinois Class</u>: Plaintiff Clancy seeks to bring Count II below on behalf of himself and all persons who, between March 9, 2019 and the date of final judgment: (1) are, were, or will be enrolled in any Salvation Army Adult Rehabilitation Center or other programs operated by Defendant with similar work requirements in Illinois—including, but not limited to, Alcohol Rehabilitation Programs, Adult Rehabilitation Programs, and Corps Salvage and Rehabilitation Centers; (2) did not or will not enroll in the ARC Program to comply with a court order or condition of probation or parole; (3) perform, performed, or will perform work for Defendant; and (4) were, are, or will be paid less than the applicable Illinois minimum wage.

        c.    <u>Wisconsin Class:</u> Plaintiff Patton seeks to bring Count IV below on behalf of himself and all persons who, between March 9, 2020 and the date of final judgment: (1) are, were, or will be enrolled in any Salvation Army Adult Rehabilitation Center or other programs operated by Defendant with similar work requirements in Wisconsin—including, but not limited to, Alcohol Rehabilitation Programs, Adult Rehabilitation Programs, and Corps Salvage and Rehabilitation Centers; (2) did not or will not enroll in the ARC Program to comply with a court order or condition of probation or parole; (3) perform, performed, or will perform work for Defendant; and (4) were, are, or will be paid less than the applicable Wisconsin minimum wage.

60.    The proposed classes are easily ascertainable because they are precise, defined by objective criteria, and not defined in terms of success on the merits.

61.    The claims of the Michigan Class, Illinois Class, and Wisconsin Class (the

"Classes") herein have been brought and may properly be maintained as class actions under Rule 23 of the Federal Rules of Civil Procedure because (1) the Classes are each so numerous that joinder of all class members is impracticable; (2) there are questions of law and or fact common to each of the Classes; (3) the claims of the representatives of each of the Classes are typical of the claims of the Classes they seek to represent; and (4) the proposed representatives of the Classes and their counsel will fairly and adequately protect the interests of the Classes. In addition, the questions of law or fact that are common to each of the Classes predominate over any questions affecting only individual class members and a class action is superior to other available means for fairly and efficiently adjudicating the controversy. *See infra* ¶¶ 63, 66.

62. <u>Numerosity</u>: Although the precise number of Class members in each Class is unknown and can only be determined through appropriate discovery, each of the Classes, as defined herein, is so numerous that joinder would be impracticable. Plaintiffs are informed and believe, and based on such information and belief, allege that that there are likely hundreds, if not thousands, of other members of each of the Classes. The names and addresses of other members of the Classes are available to Defendant. Notice can be provided to members of the Classes via first class mail or email using techniques and a form of notice similar to those customarily used in class action lawsuits of this nature.

63. <u>Commonality and Predominance of Common Questions</u>: Plaintiffs and the members of the Classes they seek to represent have all be harmed by Defendant's failure to compensate ARC workers at the applicable minimum wage on an hourly basis and for all hours worked. Accordingly, there is a well-defined commonality of interest in the questions of law and fact applicable to Plaintiffs and the Classes they seek to represent. These questions of law and fact common to the Classes predominate over any questions affecting only individual members

of the Classes. These common questions of law and fact include, without limitation:

      a.     Whether Plaintiff Clancy and members of the Illinois Class were employees of Defendant under Illinois law, 820 ILCS 105/3(d);

      b.     Whether Defendant failed to pay Plaintiff Clancy and the members of the Illinois Class the applicable Illinois minimum wage for all hours worked;

      c.     Whether Defendant violated Illinois Minimum Wage Law, 820 ILCS 105/4, by failing to pay Plaintiff Clancy and the members of the Illinois Class the applicable Illinois minimum wage;

      d.     Whether Plaintiffs Bryant and Peters and members of the Michigan Class were employees of Defendant under Michigan law, M.C.L. § 408.412(c);

      e.     Whether Defendant failed to pay Plaintiffs Bryant and Peters and the members of the Michigan Class the applicable Michigan minimum wage for all hours worked;

      f.     Whether Defendant violated the Michigan Workforce Opportunity Wage Act, M.C.L. § 408.414, by failing to pay Plaintiffs Bryant and Peters and members of the Michigan Class the applicable Michigan minimum wage;

      g.     Whether Plaintiff Patton and members of the Wisconsin Class were employees of Defendant under Wisconsin law, Wis. Stat. §§ 104.01(2) and 109.01(1r);

      h.     Whether Defendant failed to pay Plaintiff Patton and the members of the Wisconsin Class the applicable Wisconsin minimum wage for all hours worked;

      i.     Whether Defendant violated Wisconsin law, Wis. Stat. §§ 104.02 and 109.03 and Wis. Admin. Code DWD § 272.03, by failing to pay Plaintiff Patton and the members of the Wisconsin Class the applicable Wisconsin minimum wage;

      j.     The proper measure of damages, restitution, interest, and penalties owed

to Plaintiffs and the Classes.

64.     Typicality: The Plaintiffs' claims are typical of the claims of members of the
Classes they are seeking to represent.  Defendant's common course of unlawful conduct has
caused Plaintiffs and members of the Classes to sustain the same or similar injuries and damages.
All members of the Classes were subject to the same compensation policies or practices, through
which they were not paid minimum wage.  Defendant's policies or practices affected all
members of the Classes similarly, and Defendant benefited from the same type of wrongful acts
against each class member.  Plaintiffs' claims are thereby typical of and co-extensive with the
claims of members of the Classes, and the relief sought is typical of the relief that could be
sought by each member of the Classes in separate actions.

65.     Adequacy of Representation: Plaintiffs are members of the Classes they seek to
represent, do not have any conflicts of interest with the Classes they seek to represent, and will
prosecute the case vigorously on behalf of the Classes they seek to represent.  Plaintiffs will
fairly and adequately represent and protect the interests of the Classes they seek to represent.
Counsel for Plaintiffs are competent and experienced in litigating large, complex employment
class actions, including large wage and hour class actions.

66.     Superiority: Pursuit of this action collectively will provide the most efficient
mechanism for adjudicating the claims of Plaintiffs and members of the proposed Classes.
Individual joinder of all class members is impracticable.  Class action treatment will permit a
large number of similarly situated persons to prosecute their common claims in a single forum
simultaneously, efficiently, and without the necessary duplication of effort and expense that
numerous individual actions engender.  The expense and burden of individual litigation by
members of the Classes makes it impractical for members of the Classes to seek redress

individually for the wrongful conduct alleged herein. Because the losses, injuries, and damages suffered by each of the individual Class members are small in the sense pertinent to class action analysis, the expense and burden of individual litigation would make it extremely difficult or impossible for the individual class members to redress the wrongs done to them. Should separate actions be brought, or be required to be brought, by each member of the Classes, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants. The issues in this action can be decided by means of common, classwide proof. In addition, if appropriate, the Court can and is empowered to fashion methods to efficiently manage this action as a class action. The prosecution of separate actions would also create a risk of inconsistent rulings, which might be dispositive of the interests of other members of the Classes who are parties to the adjudication and/or may substantially impede their ability to adequately protect their interests.

**COUNT ONE**
**Unlawful Failure to Pay Minimum Wage**
**Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.***
*Plaintiffs on behalf of the FLSA Collective*

67.     The allegations of each of the preceding paragraphs are re-alleged and incorporated herein by reference.

68.     Plaintiffs and the FLSA Collective assert this count pursuant to 29 U.S.C. § 216(b). Plaintiffs consent to join this action. Copies of Plaintiffs Clancy and Love's consents to sue were attached to the initial Complaint as an exhibit. ECF No. 1. Copies of Plaintiffs Bryant, Peters, and Patton's consents to sue were subsequently filed on the docket. ECF Nos. 13, 35, 126.

69.     At all relevant times, Defendant was an employer engaged in commerce and/or in the production of goods for commerce within the meaning of the FLSA. *See* 29 U.S.C. §§

203(b), 203(s)(1).

70.     At all relevant times, Defendant employed Plaintiffs and the proposed FLSA Collective, and Plaintiffs and the proposed FLSA Collective were Defendant's employees, within the meaning of the FLSA.  *See* 29 U.S.C. §§ 203(e), 203(g).

71.     At all relevant times, Defendant has had gross operating revenue in excess of $500,000.

72.     The FLSA requires covered employers like Defendant to pay employees like Plaintiffs and the proposed FLSA Collective federal minimum wage for hours worked.  *See* 29 U.S.C. § 206(a).

73.     Plaintiffs and the proposed FLSA Collective's employment do not fall under any of the exemptions to the minimum wage requirements of the FLSA.  *See* 29 U.S.C. § 213.

74.     At all relevant times, Defendant failed to pay Plaintiffs and the proposed FLSA Collective at least federal minimum wage for their work.

75.     At all relevant times, Defendant knew that Plaintiffs and the proposed FLSA Collective were not paid federal minimum wage for their work, and willfully and intentionally engaged in a widespread policy or practice of failing and refusing to pay Plaintiffs and the proposed FLSA Collective federal minimum wage.  *See* 29 U.S.C. § 255.  Defendant is a large and sophisticated entity familiar with the requirements of the FLSA.  Defendant's violations were willful because it knew or showed reckless disregard for the matter of whether its conduct was prohibited by the FLSA.

76.     Defendant's willful failure and refusal to pay Plaintiffs and the proposed FLSA Collective federal minimum wage for hours worked violates the FLSA.  *See* 29 U.S.C. § 206.

77.     As a direct and proximate result of these unlawful practices, Plaintiffs and the

proposed FLSA Collective suffered and continue to suffer wage loss and are therefore entitled to recover unpaid minimum wages for up to three years prior to the filing of their claims, liquidated damages, pre- and post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as the Court deems just and proper.

**COUNT TWO**
**Unlawful Failure to Pay Minimum Wage**
**Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq.***
*Plaintiff Clancy on behalf of the Illinois Class*

78.    The allegations of each of the preceding paragraphs are re-alleged and incorporated herein by reference.

79.    Plaintiff Clancy and the Illinois Class assert this count pursuant to 820 ILCS 105/12(a).

80.    At all relevant times, Defendant employed Plaintiff Clancy and the Illinois Class, and Plaintiff Clancy and the Illinois Class were Defendant's employees within the meaning of the IMWL. *See* 820 ILCS 105/3(c), (d).

81.    The IMWL requires covered employers like Defendant to pay employees like Plaintiff Clancy and the Illinois Class the Illinois-mandated minimum wage for hours worked. *See* 820 ILCS 105/4.

82.    Plaintiff Clancy and the Illinois Class's employment do not fall under any of the exemptions to the minimum wage requirements of the IMWL.  *See* 820 ILCS 105/4(a)(3).

83.    At all relevant times, Illinois minimum wage has been at least $8.25 per hour.[1]

---

[1] The Illinois minimum wage was $8.25 per hour from July 1, 2010 through December 31, 2019,  $9.25 per hour from January 1, 2020 through June 30, 2020, $10 per hour from July 1, 2020 through December 31, 2020, $11 from January 1, 2021 through December 31, 2021; it will be $12 per hour from January 1, 2022 through December 31, 2022, and is scheduled to continue increasing until it reaches $15 per hour in 2025. *See* 820 ILCS 105/4(a)(1).

84.     At all relevant times, Defendant paid Plaintiff Clancy, as well as the putative Illinois Class members, less than $21 per week.

85.     At all relevant times, Defendant failed to pay Plaintiff Clancy and the Illinois Class at least the Illinois-mandated minimum wage for their work.

86.     At all relevant times, Defendant knew that Plaintiff Clancy and the Illinois Class were not paid the Illinois-mandated minimum wage for their work, and willfully and repeatedly engaged in a widespread policy or practice of failing and refusing to pay Plaintiff Clancy and the Illinois Class the Illinois-mandated minimum wage.  *See* 820 ILCS 105/12(a).  Defendant is a large and sophisticated entity familiar with the requirements of the IMWL.  Defendant's violations were willful because it knew or showed reckless disregard for the matter of whether its conduct was prohibited by the IMWL.

87.     Defendant's willful and repeated failure and refusal to pay Plaintiff Clancy and the Illinois Class the Illinois-mandated minimum wage for hours worked violates the IMWL. *See* 820 ILCS 105/4.

88.     As a direct and proximate result of these unlawful practices, Plaintiff Clancy and the Illinois Class suffered and continue to suffer wage loss and are therefore entitled to recover unpaid minimum wages for up to three years prior to the filing of their claims, statutory damages pursuant to the formula set forth in 820 ILCS 105/12(a), attorneys' fees and costs, and such other legal and equitable relief as the Court deems just and proper.

**COUNT THREE**
**Unlawful Failure to Pay Minimum Wage**
**Michigan Workforce Opportunity Wage Act; M.C.L. 408.410 *et seq***
*Plaintiffs Bryant and Peters on behalf of the Michigan Class*

89.     The allegations of each of the preceding paragraphs are re-alleged and incorporated herein by reference.

90.     Plaintiffs Bryant and Peters and the Michigan Class assert this count pursuant to Michigan Workforce Opportunity Wage Act ("WOWA"), M.C.L. § 408.414 and M.C.L. § 408.419.

91.     At all relevant times, Defendant employed Plaintiffs Bryant and Peters and the Michigan Class, and Plaintiffs and the Michigan Class were Defendant's employees within the meaning of the Michigan WOWA, M.C.L. §§ 408.412(b), (c).

92.     At all relevant times, Defendant has been an employer under the Michigan WOWA and has been subject to the Michigan WOWA, as the applicable federal minimum wage provisions would result in a lower minimum hourly wage than provided by the Michigan WOWA.

93.     The Michigan WOWA requires covered employers like Defendant to pay employees like Plaintiffs Bryant and Peters and the Michigan Class the Michigan-mandated minimum wage for hours worked. M.C.L. § 408.414.

94.     Plaintiffs Bryant and Peters and the Michigan Class's employment do not fall under any of the exemptions to the minimum wage requirements of the WOWA.  M.C.L. § 408.420.

95.     At all relevant times, Michigan minimum wage has been at least $9.25.[2]

96.     At all relevant times, Defendant paid Plaintiffs Bryant and Peters, as well as the putative Michigan class members no more than $25 per week.

97.     At all relevant times, Defendant failed to pay Plaintiffs Bryant and Peters and the

---

[2] The Michigan minimum wage is to be adjusted each January starting in 2019 "to reflect the average annual percentage change in the consumer price index for the most recent 5-year period for which data are available." M.C.L. § 408.414.

Michigan Class at least the Michigan-mandated minimum wage for their work.

98.     Defendants failed to furnish Plaintiffs Bryant and Peters and each member of the

Michigan Class with a statement, in each pay period required, specifying the hours worked by

each class member, in violation of the WOWA.  M.C.L. § 408.417.

99.     As a direct and proximate result of these unlawful practices, Plaintiffs Bryant and

Peters and the Michigan Class suffered and continue to suffer wage loss and therefore seek

damages in the amount of unpaid wages, liquidated damages, attorney fees and costs, and such

other legal and equitable relief as the Court deems just and proper.

**COUNT FOUR**
**Unlawful Failure to Pay Minimum Wage**
**Wis. Stat. §§ 104.02 and 109.03 and Wis. Admin Code DWD § 272.03**
*Plaintiff Patton on behalf of the Wisconsin Class*

100.    The allegations of each of the preceding paragraphs are re-alleged and

incorporated herein by reference.

101.    Plaintiff Patton and the proposed Wisconsin Class assert this count pursuant to

Wisconsin law, Wis. Stat. §§ 104.02 and 109.03 and Wis. Admin. Code DWD § 272.03.

102.    At all relevant times, Defendant employed Plaintiff Patton and the proposed

Wisconsin Class, and Plaintiff Patton and the proposed Wisconsin Class were Defendant's

employees within the meaning of Wisconsin law, Wis. Stat. §§ 104.01(2) and 109.01(1r).

103.    The minimum wage provisions of Wis. Stat. § 104.02 and Wis. Admin.

Code DWD § 272.03 apply to Defendant's employment of Plaintiff Patton and the proposed

Wisconsin Class.

104.    Plaintiff Patton and the proposed Wisconsin Class do not fall under any of the

exemptions to the Wisconsin minimum wage requirements.  *See* Wis. Stat. §§ 104.035(2)-(8).

105.    At all relevant times, Plaintiff Patton and the proposed Wisconsin Class were not

compensated for all hours worked at the applicable Wisconsin minimum wage.[3]  The precise

number of hours worked for which Plaintiff Patton and the proposed Wisconsin Class were not

paid the minimum wage will be proven at trial.

106.    At all relevant times, Defendant was aware of, and under a duty to comply with,

the provisions of Wisconsin law governing the payment of wages, including but not limited to

Wis. Stat. § 104.02 and Wis. Admin. Code DWD § 272.03.

107.    By failing to compensate Plaintiff Patton and the proposed Wisconsin Class all

wages earned to a day not more than 31 days prior to the date of payment, Defendant violated

Wis. Stat. § 109.03(1) and (5).

108.    As a direct and proximate result of Defendant's unlawful conduct, as set forth

herein, Plaintiff Patton and the proposed Wisconsin Class have sustained damages including loss

of earnings for hours worked on behalf of Defendant, in an amount to be established at trial, and

are entitled to recover their unpaid wages, including interest therein, less the cost of meals and

lodging, as provided by Wis. Stat. §§ 104.035 and 109.03(5).  Plaintiff Patton and the proposed

Wisconsin Class are also entitled to penalties due under Wis. Stat. § 109.11; recovery of

attorneys' fees, costs, and expenses of this action, as provided by Wis. Stat. § 109.03(6); and

such other legal and equitable relief as the Court deems just and proper.

**COUNT FIVE**
**Unlawful Failure to Pay Overtime**
**Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.***
*Plaintiffs Clancy, Love, and Bryant*

109.    The allegations of each of the preceding paragraphs are re-alleged and

---

[3] As relevant here, the Wisconsin minimum wage is $7.25.  *See* Wis. Admin. Code
DWD § 272.03.

incorporated herein by reference.

110.    Plaintiffs Clancy, Love, and Bryant assert this count pursuant to 29 U.S.C. § 216(b).  Plaintiffs consent to join this action.  Copies of Plaintiffs' consents to sue were attached to the initial Complaint as an exhibit.  ECF No. 1.  A copy of Plaintiff Bryant's consent to sue was subsequently filed on the docket.  ECF No. 35.

111.    At all relevant times, Defendant was an employer engaged in commerce and/or in the production of goods for commerce within the meaning of the FLSA.  *See* 29 U.S.C. §§ 203(b), 203(s)(1).

112.    At all relevant times, Defendant employed Plaintiffs Clancy, Love, and Bryant, and Plaintiffs Clancy, Love, and Bryant were Defendant's employees, within the meaning of the FLSA.  *See* 29 U.S.C. §§ 203(e), 203(g).

113.    At all relevant times, Defendant has had gross operating revenue in excess of $500,000.

114.    The FLSA requires covered employers like Defendant to pay employees like Plaintiffs Clancy, Love, and Bryant no less than one-and-a-half times their regular rate of pay for all hours worked in excess of forty in a workweek.  *See* 29 U.S.C. § 207.

115.    Plaintiff Clancy's, Plaintiff Love's, and Plaintiff Bryant's employment do not fall under any of the exemptions to the overtime requirements of the FLSA.  *See* 29 U.S.C. § 213.

116.    As described above, Plaintiffs Clancy, Love, and Bryant worked more than forty hours per week for Defendant.

117.    At all relevant times, Defendant did not properly compensate Plaintiffs Clancy, Love, and Bryant for all hours worked in excess of forty in a workweek, as required by the FLSA.

28

118.    At all relevant times, Defendant knew that Plaintiffs Clancy, Love, and Bryant had worked overtime without proper compensation, and willfully and intentionally failed and refused to pay Plaintiffs Clancy, Love, and Bryant wages at the required overtime rates.  *See* 29 U.S.C. § 255.

**COUNT SIX**
**Unlawful Failure to Pay Overtime**
**Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq.***
*Plaintiff Clancy*

119.    The allegations of each of the preceding paragraphs are re-alleged and incorporated herein by reference.

120.    Plaintiff Clancy asserts this count pursuant to 820 ILCS 105/12(a).

121.    At all relevant times, Defendant employed Plaintiff Clancy, and Plaintiff was Defendant's employee within the meaning of the IMWL.  *See* 820 ILCS 105/3(c), (d).

122.    The IMWL requires covered employers like Defendant to pay employees like Plaintiff Clancy no less than one-and-a-half times their regular rate of pay for all hours worked in excess of forty in a workweek.  *See* 820 ILCS 105/4A(1).

123.    Plaintiff Clancy's employment does not fall under any of the exemptions to the overtime requirements of the FLSA.  *See* 820 ILCS 105/4A(1).

124.    At all relevant times, Plaintiff Clancy worked more than forty hours per week for Defendant.

125.    At all relevant times, Defendant did not properly compensate Plaintiff Clancy for all hours worked in excess of forty in a workweek, as required by the IMWL.

126.    At all relevant times, Defendant knew that Plaintiff Clancy worked overtime without proper compensation, and willfully and repeatedly engaged in a widespread pattern and practice of failing and refusing to pay Plaintiff Clancy wages at the required overtime rates.  *See*

820 ILCS 105/4.

127.     Defendant's willful failure and refusal to pay Plaintiff Clancy overtime wages for all hours worked in excess of forty in a workweek violates the IMWL.  *See* 820 ILCS 105/4. Defendant is a large and sophisticated entity familiar with the requirements of the IMWL. Defendant's violations were willful because it knew or showed reckless disregard for the matter of whether its conduct was prohibited by the IMWL.

128.     As a direct and proximate result of these unlawful practices, Plaintiff Clancy and the Illinois Class suffered and continue to suffer wage loss and are therefore entitled to recover unpaid minimum wages for up to three years prior to the filing of their claims, statutory damages pursuant to the formula set forth in 820 ILCS 105/12(a), attorneys' fees and costs, and such other legal and equitable relief as the Court deems just and proper.

**COUNT SEVEN**
**Unlawful Failure to Pay Overtime**
**Michigan Workforce Opportunity Wage Act; M.C.L. 408.410 *et seq***
*Plaintiff Bryant*

129.     The allegations of each of the preceding paragraphs are re-alleged and incorporated herein by reference.

130.     Plaintiff Bryant asserts this count pursuant to WOWA, M.C.L. § 408.414a and M.C.L. § 408.419.

131.     At all relevant times, Defendant employed Plaintiff Bryant, and Plaintiff Bryant was Defendant's employee within the meaning of the Michigan WOWA, M.C.L. § 408.12(b), (c).

132.     The WOWA requires covered employers like Defendant to pay employees like Plaintiff Bryant no less than one-and-a-half times their regular rate of pay for all hours worked in excess of forty in a workweek.  *See* M.C.L. § 408.414a.

133.    Plaintiff Bryant's employment does not fall under any of the exemptions to the overtime requirements of the WOWA. *See* M.C.L. § 408.420.

134.    Plaintiff Bryant worked more than forty hours per week for Defendant.

135.    At all relevant times, Defendant did not properly compensate Plaintiff Bryant for all hours worked in excess of forty in a workweek, as required by the WOWA.

136.    As a direct and proximate result of these unlawful practices, Plaintiff Bryant suffered wage loss and therefore is entitled to recover unpaid overtime wages, liquidated damages, attorney fees and costs, and such other legal and equitable relief as the Court deems just and proper.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, and all those similarly situated, collectively request that this Honorable Court:

137.    Issue an order certifying this action as a collective action under the FLSA and designating Plaintiffs as representatives of all those similarly situated, 29 U.S.C. § 216(b).

138.    Authorize that notice of this collective action be issued by the Court or Plaintiffs to all persons who have participated in Defendant's ARCs at any time during the three years immediately preceding the filing of this suit, up through and including the date this notice is issued.  Such notice shall inform these persons of the filing of this civil action, the nature of the action, and their right to join this lawsuit if they believe they were denied proper wages pursuant to 29 U.S.C. § 216(b).

139.    Grant leave to add additional plaintiffs or claims by motion, the filing of consent forms, or any other method approved by the Court.

140.    Issue an order certifying the Michigan Class, the Illinois Class, and the Wisconsin

Class pursuant to Federal Rule of Civil Procedure 23.

141.    Issue an order appointing Plaintiffs Bryant, Peters, Clancy, and Patton as class representatives of the classes they seek to represent.

142.    Issue an order appointing Plaintiffs' counsel as Class Counsel for all of the Classes.

143.    Issue an order providing for notice to the Classes.

144.    Enter a declaratory judgment that Defendant's violations were unlawful under the FLSA and were willful.

145.    Award Plaintiffs and all those similarly situated actual damages for unpaid wages and liquidated damages equal to the unpaid wages found due to Plaintiffs and the proposed FLSA Collective as provided by the FLSA, 29 U.S.C. § 216(b).

146.    Award Plaintiffs and all those similarly situated pre- and post-judgment interest at the relevant statutory rate as provided by the FLSA, 29 U.S.C. § 216(b).

147.    Award Plaintiffs and all those similarly situated attorneys' fees, costs (including expert fees), and disbursements as provided by the FLSA, 29 U.S.C. § 216(b).

148.    Award Plaintiff Clancy and the Illinois Class actual damages for unpaid wages, statutory damages, attorneys' fees, and costs, as provided under Illinois law.

149.    Award Plaintiffs Bryant and Peters and the Michigan Class actual damages for unpaid wages, liquidated damages, attorneys' fees, and costs, as provided under Michigan law.

150.    Award Plaintiff Patton and the Wisconsin Class actual damages for unpaid wages, civil penalties, attorneys' fees, and costs, as provided under Wisconsin law.

151.    Award Plaintiffs, the Michigan, Illinois, and Wisconsin Classes, and all others similarly situated further legal and equitable relief as this Court deems necessary, just, and

proper.

## JURY DEMAND

Plaintiffs, on behalf of themselves and all others similarly situated, hereby demand a trial by jury on all issues so triable.

DATED: December 11, 2023        Respectfully submitted,

COHEN MILSTEIN SELLERS & TOLL PLLC

By:    */s/ Christine E. Webber*
        Christine E. Webber (Ill. Bar No. 6208020)
        Joseph M. Sellers
        Rebecca A. Ojserkis
        1100 New York Ave. N.W., Suite 500
        Washington, D.C. 20005
        Tel.: (202) 408-4600
        Fax: (202) 408-4699
        cwebber@cohenmilstein.com
        jsellers@cohenmilstein.com
        rojserkis@cohenmilstein.com

        Michael Hancock
        Cohen Milstein Sellers & Toll PLLC
        88 Pine Street, 14th Floor
        New York, NY 10005
        Tel.: (212) 838-7797
        Fax: (212) 838-7745
        mhancock@cohenmilstein.com

ROSEN BIEN GALVAN & GRUNFELD LLP

By:    */s/ Michael Freedman*
        Gay Grunfeld
        Michael Freedman
        Priyah Kaul
        101 Mission Street, 6th Floor
        San Francisco, CA 94105
        Tel.: (415) 433-6830
        Fax: (415) 433-7104
        ggrunfeld@rbgg.com
        mfreedman@rbgg.com
        pkaul@rbgg.com

RUKIN HYLAND & RIGGIN LLP

By:     */s/ Jessica Riggin*
         Jessica Riggin
         1939 Harrison St., Suite 925
         Oakland, CA 94612
         Tel.: (415) 421-1800
         Fax: (415) 421-1700
         jriggin@rukinhyland.com

*Attorneys for Plaintiffs*