```
 1                    UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF ILLINOIS
 2                          EASTERN DIVISION

 3   MICHAEL CLANCY, et al.,          )  Case No. 22 C 1250
                                      )
 4              Plaintiffs,           )
                                      )
 5     vs.                            )
                                      )
 6   THE SALVATION ARMY, an Illinois  )
     nonprofit corporation,           )  Chicago, Illinois
 7                                    )  January 22, 2025
                Defendant.            )  9:30 o'clock a.m.
 8
               TRANSCRIPT OF PROCEEDINGS - MOTION/STATUS HEARING
 9              BEFORE THE HONORABLE MANISH S. SHAH

10   APPEARANCES:

11   For the Plaintiffs:        COHEN MILSTEIN SELLERS & TOLL, PLLC
                                BY:  MS. HARINI SRINIVASAN
12                              1100 New York Avenue, N.W., #500
                                Washington, D.C.  20005
13
                                ROSEN BIEN GALVAN & GRUNFELD, LLP
14                              BY:  MR. MICHAEL L. FREEDMAN
                                101 Mission Street, 6th Floor
15                              San Francisco, California  94105

16
     For the Defendant:         CROWELL & MORING, LLP
17                              BY:  MS. KATIE R. ABER
                                     MS. RACHEL LESSER
18                                   MS. TONI MICHELLE JACKSON
                                1001 Pennsylvania Avenue, N.W.
19                              Washington, D.C.  20004

20

21   Court Reporter:            COLLEEN M. CONWAY, CSR, RMR, CRR.
                                Official Court Reporter
22                              219 S. Dearborn Street, Room 1918
                                Chicago, Illinois  60604
23                              (312) 435-5594
                                colleen_conway@ilnd.uscourts.gov
24
                                * * * * *
25              PROCEEDINGS REPORTED BY STENOTYPE
        TRANSCRIPT PRODUCED USING COMPUTER-AIDED TRANSCRIPTION
```

1      (Proceedings heard in open court:)

2           THE CLERK:  Calling case 22 Civil 1250, Clancy, et

3  al., versus The Salvation Army.

4           THE COURT:  Good morning.  Why don't we start with

5  appearances for the record, starting with counsel for the

6  plaintiffs.

7           MS. SRINIVASAN:  Sure.  Harini Srinivasan from Cohen

8  Milstein Sellers & Toll on behalf of plaintiffs.

9           MR. FREEDMAN:  Michael Freedman from Rosen Bien Galvan

10  & Grunfeld also on behalf of plaintiffs.

11           MS. ABER:  Good morning, Your Honor.  Katie Aber on

12  behalf of defendant.

13           MS. LESSER:  Good morning.  Rachel Lesser from Crowell

14  & Moring also on behalf of defendant.

15           MS. JACKSON:  Good morning, Your Honor.  Toni Michelle

16  Jackson on behalf of The Salvation Army from Crowell & Moring.

17           THE COURT:  Good morning.  Nice to see everybody.

18  Welcome to Chicago in January.  I appreciate you coming in for

19  this.

20           As you, no doubt, know, the case has been pending for

21  a long time, and I thought that it was time that we all met and

22  talked about how things were coming along.  So I appreciate it.

23  And we can talk about all of that.

24           The motion to withdraw as counsel for certain opt-ins,

25  I understand that that was not objected to by the defense.

3

1        That motion is granted.  That's docket No. 238.

2        I am assuming, plaintiffs' counsel, you haven't heard

3   anything from those particular former clients?

4        MS. SRINIVASAN:  No, we have not.

5        THE COURT:  My view is that in addition to counsel

6   being given leave to withdraw, giving them leave to withdraw

7   from the representation of those plaintiffs, because those

8   plaintiffs have not responded to counsel, and they have been

9   given an opportunity to know what's happening here, that is

10  enough for me to conclude that those plaintiffs are not

11  prosecuting their individual claims.

12       I am dismissing their claims without prejudice, with

13  leave to reinstate by February 19th, 2025.  If they don't move

14  to reinstate their claims by then and demonstrate an intent to

15  prosecute by full and complete participation in this

16  litigation, then their claims will be automatically dismissed

17  with prejudice for failure to prosecute.

18       I did consider giving them more time to ask to be

19  reinstated, but this case has been pending long enough, and

20  either plaintiffs are invested or they're not invested in

21  seeing the case to the finish line.  And so I'll give them

22  about four weeks.  And if we don't hear from them, then their

23  actions or their claims are dismissed with prejudice.

24       The motion to set a briefing schedule on the motion to

25  dismiss is denied, because plaintiffs filed a response, and I

4

1     am not authorizing a written reply.  We're going to talk about

2     it now.

3              So that motion, which is docket 236, is denied.

4              Let's turn to the motion to dismiss.

5              On behalf of defendant, what's your position with

6     respect to Mr. Stafford who, it sounds like, sent in some

7     responses late?

8              You can have a seat.  Just speak into a microphone.

9              MS. ABER:  Sure.

10             Your Honor, our position with respect to Mr. Stafford

11    is that his claims should be dismissed as well.

12             His responses were untimely.  The plaintiffs had

13    almost four months to reply to the RFAs.  We extended the fact

14    discovery deadline from October 25th to December 31st.  The

15    responses were not received by the end of the fact discovery

16    deadline.  They also were not received by our meet-and-confer

17    by the time we filed our motion.

18             It seems to us that what plaintiffs want to do here is

19    keep extending and keeping open the fact discovery to allow

20    these responses to continue rolling in, and that's just

21    inappropriate.  Given that fact discovery has ended now,

22    Mr. Stafford's responses should not be considered timely and he

23    should be dismissed.

24             THE COURT:  I may have miscounted as I was trying to

25    keep track of the different plaintiffs and the timing of their

1   responses, but have there been some plaintiffs who did respond

2   outside the time you had originally, either by rule or by

3   agreement, set that the defendant has decided to accept and not

4   dismiss on?

5         MS. ABER:  Yes, Your Honor.  There were two opt-in

6   plaintiffs who did not respond by the December 31st deadline.

7         But before we filed our motion, plaintiffs' counsel

8   informed us that they had gotten into contact with them, that

9   they were incarcerated, but would be able to respond before we

10   filed our motion, and so we did not include them in our motion.

11         So the five that were included in our motion were ones

12   who were outstanding as of that time and we had not heard from

13   plaintiffs' counsel that they had made contact with.

14         THE COURT:  And what's your reply to the argument

15   that:  You have 55 responses.  Four more aren't going to

16   meaningfully change the landscape, one way or the other, on the

17   case.  And so dismissal of those is really too harsh a

18   response?

19         MS. ABER:  Well, I think we have two responses to

20   that.

21         One is that it is the plaintiffs' obligation to

22   respond to discovery, and it is not appropriate for plaintiffs

23   to remain in this case if they are not fulfilling their duty to

24   respond to discovery.

25         As far as the burden on TSA, Salvation Army, this was

1    a small subset of the opt-in population, to begin with.  So

2    while five individuals may be a small subset of that 55

3    original set of opt-in plaintiffs, we were only getting a small

4    amount of responses, to begin with, and this has reduced that

5    even further.

6           I think we have the right to individualized discovery.

7    We agreed to a certain number.  And so it would unfairly

8    prejudice The Salvation Army to not even be able to get that

9    amount of discovery when this Court recognized in its order

10    that that was a fairly small amount.

11           And also that the dismissal of these plaintiffs,

12    because I think plaintiffs' counsel argued in their motion for

13    protective order, that this would likely lead to the dismissal

14    of some plaintiffs because there have been problems with

15    responsiveness all along, and that that -- having that small

16    number dismissed was -- would not lead to any disproportionate

17    problem in chilling the class or winnowing it down.

18           And to that, I think --

19           THE COURT:  I suppose I am just trying to drill down

20    on --

21           MS. ABER:  Sure.

22           THE COURT:  -- what meaningful change in the landscape

23    of information would come from, for example, deeming the

24    requests to admit of those plaintiffs admitted?

25           I mean, that's usually the response to untimely

1    responses to requests to admit, is they're admitted, and then

2    everyone moves forward from there.

3            MS. ABER:  Yes, Your Honor.

4            In this case, we know that plaintiffs are filing for

5    class certification, so the individualized differences between

6    plaintiffs matter.  So just having deemed them admitted in some

7    cases, perhaps that would be helpful, but also it does not

8    provide the individualized responses that we would be using in

9    a response to class certification.

10           THE COURT:  Well, why is that?

11           If you had four to five requests to admit that were

12   just admitted outright without any kind of lawyerly response in

13   response to them, why wouldn't that advance your cause?

14   Because you would then cite to those to say:  Here are some

15   individualized issues, because these X number are deemed to

16   have admitted to, effectively, your theory of some critical

17   facts of the case.

18           MS. ABER:  Well, I think we can't know that, Your

19   Honor, because we don't know what individualized responses we

20   might have gotten, had these plaintiffs responded, that could

21   have been useful to us had there been, for example, an answer

22   to the requests for admission regarding whether anyone had told

23   them that they were an employee.

24           While a response of:  Admit that no one has told you

25   that you were an employee, may be useful to us, in some ways,

1  there are plenty of other responses that could be useful on the

2  motion for class certification, an opposition to a motion for

3  class certification, because they represent the individualized

4  experiences of the beneficiaries at the ARC.

5      THE COURT:  And you think those would have come from a

6  response to the requests to admit?

7      MS. ABER:  Yes, Your Honor.

8      THE COURT:  For the plaintiffs, why aren't we just in

9  the same position you're in with respect to the clients that

10  you've lost contact with and you moved to withdraw?

11      If they're not responding to the requests to admit,

12  why isn't that effectively the same problem you've encountered

13  before and we need to move the case forward?

14      And if I don't have the confidence that they're going

15  to participate, shouldn't we get to that understanding sooner

16  rather than later?

17      MS. SRINIVASAN:  Right.  I think the distinction

18  between these, I'll say, four individuals who haven't provided

19  responses --

20      THE COURT:  Can I interrupt just to say, there is no

21  dispute that one person is deceased.  And so that's not really

22  at issue meaningfully, right?

23      MS. ABER:  That's --

24      MS. SRINIVASAN:  Oh, sorry.  Go ahead.

25      MS. ABER:  That was one of the original eight people

1    who did not respond and was not included in our motion.

2         MS. SRINIVASAN:  Right.  My reference to the four

3    individuals, Your Honor, is that one individual did submit the

4    RFAs.  I understand defendant's position is that those were

5    untimely.

6         But to respond to your question first.  I think the

7    distinction between those four who have not yet provided

8    responses to RFAs and the other individuals in our motion to

9    withdraw is that these four have responded to discovery.  They

10   have provided interrogatory responses.  They have provided

11   those responses with penalty of perjury.  They have produced

12   any responsive documents that they had in their possession.

13   And so the -- they have shown that they are interested in

14   vigorously prosecuting their claims.

15        While we are -- neither side is aware of the reasons

16   that these individuals have become unresponsive, they've

17   already demonstrated that this is not a willful or bad-faith or

18   at-fault lack of responsiveness.  It is most likely due to

19   issues that they are facing personally.

20        So we would like to be able to give them more time,

21   especially given that defendant has indicated that they would

22   like to use this information in response to plaintiffs' motion

23   for class certification and for final certification of the

24   collective.

25        Our motion will be due sometime soon, but their

1  opposition motion won't be due for at least several weeks after

2  that date.  So there is no immediate prejudice to waiting for

3  those responses.

4       THE COURT:  Okay.  The time to respond to the requests

5  to admit has passed.  I am not giving those plaintiffs more

6  time to respond.

7       I will allow Mr. Stafford's responses to count.  And

8  the motion to dismiss is denied.  But the non-responded-to

9  requests to admit are deemed admitted, and you will move

10  forward that way.

11       I do think dismissal, even without prejudice, is too

12  harsh a sanction for the failure to comply with discovery in

13  light of the history of their participation.

14       And the ordinary recourse to untimely discovery,

15  especially in the context of requests to admit, is to deem

16  those requests admitted.

17       So the non-responded-to requests to admit are

18  admitted.  Mr. Stafford's untimely response will be allowed to

19  stand.

20       But fact discovery is closed.  And so there will be no

21  more supplements or rolling information coming in late.

22  Because now you need to, and we all need to, talk about what's

23  happening next and what's the timeline for that, and what are

24  your respective visions for class certification and summary

25  judgment, what order are briefs going to be coming in, how many

1    pages are you going to want.  If you're moving for summary

2    judgment, how many facts are you going to want.

3           I think we should talk about whether -- well, I want

4    to hear from you first what your vision is and then I'll let

5    you know what I think.

6           And I know back in July, there was a proposed schedule

7    for summary judgment and class certification.

8           So first, let's talk about -- so the motion to

9    dismiss, which is docket 231, is denied.

10           The expert discovery, is that all done except for the

11    individualized damages expert discovery that had been deferred?

12           What's the status?  I'll ask plaintiffs.

13           MS. SRINIVASAN:  Yes, Your Honor.

14           Expert discovery concluded last Friday, on January

15    17th.  I think the only item outstanding from that is if the

16    parties intend to file motions to strike any of the expert

17    opinions.  We would just ask for a briefing schedule for that.

18           But, otherwise, expert discovery has concluded outside

19    of individualized damages calculations.

20           THE COURT:  Have you discussed how you want to proceed

21    at this point, since the proposal back in July?  And what's the

22    plaintiffs' proposal?

23           MS. SRINIVASAN:  Sure.  The parties have met and

24    conferred and have a proposal for you, Your Honor.

25           The proposal is that plaintiffs' motion for class

1    certification and final certification of the collective, as

2    well as defendant's motion for summary judgment with respect to

3    the five named plaintiffs, as well as motions to strike any

4    expert opinions, would all be due on the same day, and our

5    proposal is March 28th for those motions.

6            I can discuss our request on page limits at the same

7    time or afterward.

8            THE COURT:  Do you know, on behalf of plaintiffs, now

9    whether you're moving to strike any defense experts?

10           MS. SRINIVASAN:  We -- given that the expert discovery

11   just concluded, we're not certain.  There is a strong

12   possibility that we will.

13           THE COURT:  And does the defense know now whether

14   you're moving to strike plaintiffs' experts?

15           MS. LESSER:  We have the same answer, that we

16   concluded last week and are still considering our options.

17           THE COURT:  Are the plaintiffs moving for summary

18   judgment on --

19           MS. SRINIVASAN:  We are --

20           THE COURT:  -- any issues?

21           MS. SRINIVASAN:  -- not, Your Honor.

22           THE COURT REPORTER:  I'm sorry?

23           MS. SRINIVASAN:  We are not intending to.

24           THE COURT:  And what's the defense thinking in terms

25   of summary judgment?

1        And by that, I mean, are there global legal theories

2    or issues that you're going to attack along with individual

3    plaintiff-specific issues on the merits?

4        And I am asking that because I am thinking, how

5    unwieldy is it going to be?  And should we break things up a

6    little bit so that it's a little more manageable?

7        And then, related to that, it gets challenging from,

8    frankly, a time management perspective to have the motions to

9    strike experts at the same time that you're briefing summary

10   judgment.

11       So that's something to think through:  What's a good

12   use of your time?  And sometimes it makes good sense to just

13   give the judge everything and let the judge figure out what

14   order the judge wants to sort through them.  But sometimes it

15   might be better to do it in bite-size pieces.

16       I am making no promises about how quickly I am going

17   to get to anything.  But that's a long preface to asking the

18   question I started with, which is, what's your vision for

19   summary judgment?

20       MS. ABER:  Yes, Your Honor.  We do think that there

21   are global issues; thinking back to our motion to dismiss, the

22   primary beneficiary analysis that applies to not just the named

23   plaintiffs individually, but the entire class collective legal

24   issue as a whole.

25       THE COURT:  Is your -- I am not committing you to

1   this, but is your thought that that would be what your motion

2   for summary judgment is?  Or, are you thinking your motion for

3   summary judgment will also say:  And plaintiff by plaintiff,

4   here are reasons why we get summary judgment on this particular

5   plaintiff?

6          MS. ABER:  Without committing to any particular

7   strategy, I would say I think our summary judgment motion

8   will -- we hope will dispose of the case as a whole.  So it

9   will act globally in addition to potentially dealing with

10  anything as to the individual plaintiffs.

11         THE COURT:  What is your thought on moving for summary

12  judgment at the same time that any motions to strike experts

13  would be due?

14         MS. ABER:  I think, at this point, we had considered

15  that would be the case and prepared ourselves for that being

16  the case.  So I think we're open to other proposals, if the

17  Court has them, but -- yeah, we're willing to consider.

18         THE COURT:  And I imagine if there's a motion to

19  strike plaintiffs' experts, one or more of plaintiffs' experts,

20  that also will be directed to the motion for class

21  certification.  Am I right about that?

22         MS. ABER:  Yes, Your Honor.

23         THE COURT:  And until the defense sees the motion for

24  class certification, they might not know really whether they

25  want to move to strike a particular plaintiffs' expert or what

part of the plaintiffs' expert opinion they want to strike, or ask for an evidentiary ruling with respect to part of the expert's opinion.

So I think what we ought to do is table the motions for summary judgment until plaintiffs file the motion for class certification and the defense then sees in that motion how plaintiffs are using experts in support of class certification.

And then fairly quickly on the heels of that motion getting filed, I would think the defendant can file an opening motion and brief for summary judgment. Then we can all confer and talk about: Now that you know what both sides' opening salvos are, what makes sense for the next rounds? And how and when we ought to do that.

And then that would also include -- if not, at that point, a motion about experts, we would at least talk about: Are you ready to file a motion with respect to experts? And how quickly can you do that?

The alternative would be, as you propose, everyone files an opening salvo on the same day and then we could talk after that.

The reason I am thinking about giving, effectively, the defense a little time to see the plaintiffs' motion for class certification before moving on experts and for summary judgment is so that we might be able to have a more intelligent conversation about the vision of the case that way.

1  You know much more than I do about what this is going

2  to look like, and you probably already know a lot of what's

3  coming.  And since you've talked and you thought it made sense

4  for everyone to move at the same time, that might be the better

5  approach.

6  So I am not suggesting that what I had just spun out

7  makes better sense.  I just wanted to think that through.  So I

8  am putting that idea out there.

9  At a minimum, I think I want to see the opening briefs

10  before we set deadlines for responses and replies.

11  So with those thoughts from me, what do plaintiffs

12  think?

13  MS. SRINIVASAN:  Just a couple of clarification

14  questions, Your Honor.

15  Are you contemplating that plaintiffs' *Daubert*

16  motions, if any, would still be due at the time that we file

17  our motion for class certification?

18  THE COURT:  I would think only -- if you don't have a

19  defense motion for summary judgment to move against, then no.

20  MS. SRINIVASAN:  Right.  Okay.

21  THE COURT:  It would be only -- but if you know you

22  have a *Daubert* motion as to a defense expert you know is coming

23  in response to your motion for class certification, then that

24  would be the time to tee that up.

25  MS. SRINIVASAN:  Got it.

1    And if the summary judgment deadline was moved so that

2  it would be after plaintiffs file our motion for class

3  certification, it would still be specific to the named

4  plaintiffs in the action.

5    Is that what you're contemplating as well?

6    THE COURT:  No.  I am contemplating that the defense

7  will file whatever motion for summary judgment they want to

8  file.

9    Frankly, my preference would be, it is global so that

10  we know, big picture, whether this case is moving forward or

11  not.

12    My discussion about, are we talking about case

13  individual-plaintiff-specific was to discourage that.

14    MS. SRINIVASAN:  Right.

15    THE COURT:  Because I am worried that that is too

16  fact-specific to be meaningfully helpful to anybody, big

17  picture.  And I had long expected there to be at least one or

18  more globally-applicable legal issues for which the facts are

19  now developed that we could find out about the merits of those.

20    So my hope was that we may even say just move for

21  summary judgment on the big picture claim and we can table

22  whether you can move again on individual plaintiffs after we

23  resolve that.

24    But I want to see both what the plaintiffs' vision is,

25  and that likely will come in the class certification motion,

1  especially since plaintiffs are not moving for summary judgment

2  on affirmative liability.  So we know that.

3          So then we will get their motion for class

4  certification and then the defense can tell me:  We know what

5  our summary judgment theory is, and we can do it in a global

6  motion that will apply everywhere.  Or, the defense -- we

7  haven't resolved this.  Or, the defense can just move at the

8  same time you get their motion for class certification and then

9  we can all talk.

10         So do plaintiffs have a preference on that?

11         MS. SRINIVASAN:  I don't think so.  I think we would

12  be fine with the staged approach or we would be fine with

13  having the deadlines at the same time.

14         We can see the benefits of -- I think both sides can

15  probably come to this with a fuller understanding of each

16  other's positions following our motion for class certification,

17  but we are -- we're open to the Court's preference there.

18         THE COURT:  Before I ask the defense, would you all

19  mind if we recessed for a moment so that I can hear another

20  case that will take less than a minute?  And so you don't have

21  to move, but we're going to recess this for just a moment.

22         Thank you.  Let's call the next case.

23    (Whereupon, the Court heard another matter on his call.)

24         THE COURT:  Recalling case 22 CV 1250.

25         What does the defense think about everybody moving at

1    the same time in March?  Or do you want to see plaintiffs'

2    opening salvo first and then talk to me about what next steps

3    might be?  Understanding that next steps from you might be

4    pretty quick, because I will have expected that you will be

5    getting ready and you know pretty much what you're planning to

6    do.  And then we're talking about tweaking maybe an approach or

7    two and getting the defense in the mix pretty quickly on the

8    heels of the plaintiffs' opening round.

9            So what do you think?

10           MS. ABER:  Yes, Your Honor.  We are -- we're fine with

11   that proposal as well.

12           THE COURT:  Well, I suppose I want to know, do you

13   think it's a better approach?

14           MS. ABER:  Yes.

15           THE COURT:  Because your initial approach was, let's

16   all do it at the same time.  Maybe that's the better approach.

17   I am not wed to anything.

18           MS. ABER:  Yes.  We think it's the better approach.

19           THE COURT:  Page limits for plaintiffs' motion for

20   class certification?

21           MS. SRINIVASAN:  Sure.  Our -- the proposal that we're

22   jointly coming with is 50 pages for the opening motions.

23           THE COURT:  Are you all available by phone on April

24   2nd or 3rd?  I'll give you a moment to look at your calendars.

25           MS. SRINIVASAN:  That's fine for plaintiffs, Your

1 Honor.

2 THE COURT: Either day?

3 MS. SRINIVASAN: Either day, yeah.

4 MS. LESSER: That's fine for defendants as well.

5 Defendant. Apologies.

6 THE COURT: Okay. How about Wednesday, April 2nd at

7 10:00 a.m. Central time for a phone status conference?

8 Everyone's nodding their heads. So that will be the

9 next court date.

10 Plaintiffs' motion for class certification and final

11 collective certification is due March 28th. And plaintiffs may

12 use up to 50 pages for their brief.

13 Any motion from plaintiffs to exclude anticipated

14 defense experts on the issue of class certification must also

15 be filed by March 28th.

16 Then we will talk on April 2nd about how quickly the

17 defense will be ready to respond to those motions, what

18 expert-related motions the defense may have, and what the

19 defense motion for summary judgment is going to look like, and

20 then we'll talk about limits on the numbers of facts that can

21 be used for summary judgment and the like.

22 MS. ABER: Your Honor, given that we may have to have

23 our summary judgment motion prepared pretty shortly after that,

24 would it be possible to talk about those limits today, in terms

25 of the fact limits and the page limits, so we know what we're

1    looking at for summary judgment?

2            THE COURT:  Sure.  My first question is, do you --

3    let's say you're only moving for summary judgment on big global

4    issues related to the entirety of the case.  How many facts do

5    you think you need given that the local rule gives you 80 and

6    that is, in most cases, enough?

7            MS. ABER:  Your Honor, given the size of this case, we

8    were hoping for 150.

9            THE COURT:  So tell me why.  And we can talk about how

10   complicated the case is.  But why 150 facts for theories that

11   are fairly global about how The Salvation Army works, what its

12   purposes are, what its mission is?  And the nature of the

13   plaintiffs' relationship to The Salvation Army when they are at

14   these facilities seems like, at least what I would have

15   expected from the defense, would be something along the lines

16   of:  This is how it works everywhere, at least thematically.

17   And here's one fact that establishes what we do.  And here's

18   another fact that says this is how this works.

19           So why do you need 150 of those?

20           MS. LESSER:  I think there are a few reasons why we

21   think 150 is appropriate.  One is just the extensive discovery

22   that has happened in this case that we think will be useful for

23   level-setting and helping Your Honor understand the summary

24   judgment.

25           And a lot of what we anticipate going into our motion

1    is an understanding of The Salvation Army's mission and

2    purpose, and that goes into a global understanding of what

3    we're trying to put forth in our motion.  A lot of that comes

4    from several 30(b)(6) motions that lasted a number of days, as

5    well as hundreds of thousands of pages of documents that were

6    produced.

7        As you've seen from the motions practice, there is

8    also quite a bit of discovery of the plaintiffs here.  And we

9    think that while those are individual plaintiffs, their

10   experience also helps with understanding what happened globally

11   at the program, at individual ARCs.

12       We also think what will come across in our argument is

13   a description of the finances of the program, which requires

14   some amount of space to describe.  Just, as you know,

15   explaining math sometimes takes a few paragraphs to get across

16   as well.

17       THE COURT:  Do the plaintiffs have any thoughts about

18   the number of facts that the defense would want?

19       MS. SRINIVASAN:  The defense had raised that proposal

20   with us, and we were amenable to that, subject to plaintiffs

21   also having additional -- the opportunity to have additional

22   fact statements as well for our response.

23       THE COURT:  The default approach in our local rules is

24   that the plaintiffs get half as many for additional facts.

25       Would you be okay with that?

1            MS. SRINIVASAN: We had requested, when we discussed

2 this with defendant, having a hundred additional facts.

3            Given that this is also plaintiffs' opportunity to

4 explain the global narrative of the case, we recognize that

5 that might take additional paragraphs than certainly than the

6 default in the local rules and also more than the general rule

7 of thumb of having half the fact statements.

8            So we -- that's why we had proposed a hundred.

9            THE COURT: This may be an unfair question, but do you

10 know now that when you see a fact proposed by the other side,

11 you are going to wordsmith it to death and dispute it because

12 you don't like the way they phrase something, even though it

13 is, generally speaking, consistent with the underlying

14 evidence?

15            Is that the kind of -- am I going to get those kinds

16 of fights in your fact statements? So I'll start with

17 plaintiffs.

18            MS. SRINIVASAN: Is this directed at us?

19   (Laughter.)

20            THE COURT: It's directed to both sides.

21            MS. SRINIVASAN: Yeah.

22            THE COURT: I appreciate that you all actually do seem

23 to be working well with each other. You're reaching these

24 agreements about how to proceed. What sometimes happens,

25 though, is that then I get a pile of disputes that make it very

1   difficult for me to really know how many of these do I need to

2   actually resolve to get to the finish line.

3          And it makes that process on my end pretty

4   challenging.  And that's why you can sometimes wait a long time

5   to get resolution, because I am going line by line, fact by

6   fact to figure out whether a fact is controverted or not

7   controverted.  And I might not really fully appreciate, until I

8   get to the end, that I never even had to do that.

9          So I am giving you a little peek behind the curtain on

10  the process so that you know what it is you're getting when you

11  have those kinds of fights.

12         So it's kind of an unfair question, but I do want to

13  know, and expect, that if you're going to have these many

14  facts, I don't want you to be wordsmithing, each side, about

15  what they're proposing.

16         MS. SRINIVASAN:  Yes.

17         THE COURT:  Does that make sense?

18         MS. SRINIVASAN:  It does make sense.

19         And I'll also note that following the motion for

20  protective order, when we started responding to our phase, the

21  parties were able to stipulate to a set of facts that did not

22  take immense work and fighting over.

23         So I think we can -- I think we'll take a similar

24  approach here of disputing facts where necessary, but not

25  claiming that each and every fact in this case is controverted.

1          THE COURT:  And does the defense share plaintiffs'

2    hopefulness and notion that while you are adversaries, you also

3    are reasonably approaching the facts with an understanding of

4    what's really at issue and what's not at issue?

5          MS. LESSER:  Yes, absolutely.  We similarly found the

6    process to come to an agreement on stipulations to work

7    smoothly, and I think that process went well.

8          And our intention with this, understanding Your

9    Honor's perspective here, will be to hone in on the disputes

10   and any controverted facts that truly need to be brought to

11   Your Honor's attention and not to, you know, pick fights with

12   words or some such thing.

13         THE COURT:  Then I will give defendants leave to use

14   up to 150 facts in support of summary judgment.  And plaintiffs

15   will have up to a hundred additional facts in response to

16   defendant's summary judgment motion.

17         I am less worried about page limits on briefs.  And we

18   can talk about the page limit on briefs once you see the motion

19   for class certification.  We can talk about page limits then.

20         What else can we/should we talk about, since we're all

21   together this morning?

22         From plaintiffs, anything else you would like to talk

23   about?

24         MS. SRINIVASAN:  I don't think so.

25         I do have perhaps a differing proposal than what we

1    just offered you on the motions to exclude, given -- I think

2    the way that we discussed the utility of those today made me

3    wonder if it makes sense for plaintiffs' motion to be due

4    following defendants responding on class certification, if that

5    would perhaps aid the Court more and perhaps aid in us having,

6    again, intelligent discussion around these issues, for us to

7    see how defendants intend to use expert testimony and services

8    opposing class certification.

9         But I also recognize, we haven't discussed that

10   proposal with the other side.  And so if you would like us to

11   come back after conferring with a differing proposal, happy to

12   do that.

13        THE COURT:  Let's do this.  I will revise my order and

14   defer a deadline for plaintiffs to move to exclude defense

15   experts.  We can talk about that on April 2nd.

16        You will then -- defense will have seen the motion for

17   class certification, you'll see how the plaintiffs are using

18   experts, and you'll then be in a position to say:  We're going

19   to move to strike plaintiffs' class experts, and we are relying

20   on our own experts on the following points, which will then

21   tell you:  Oh, if that's how they're going to use their

22   experts, we're going to be moving to strike their experts.

23        And I likely will -- once I have a better handle on

24   what experts are we talking about and how they map on to the

25   plaintiffs' theory of class certification, and then we're

1    talking about summary judgment, we'll talk about:  How do I

2    resolve the fights over experts?  And in what order with

3    respect to substantive briefing on the issues?

4         So it may be that before you actually have to

5    substantively respond to the motion for class certification,

6    we're going to hash out what experts are fair game for class

7    cert. or not.

8         Similarly, you may move for summary judgment and then

9    maybe we have a discussion about what experts are fair game or

10   not before responding to summary judgment.  Or, maybe you know

11   enough to say:  It's not worth us, defense, moving for summary

12   judgment until we know whether our experts are in or out.

13        And so we might have to talk about that.  So it may be

14   that we have a round of vetting experts before an opening

15   motion for summary judgment and before a response to the class

16   certification.  Don't know how long that's all going to take.

17        I don't know if that's something that we should do in

18   writing or whether that's something that we should have a

19   *Daubert* hearing on before anyone puts pen to paper on briefs.

20   Sometimes that's a faster way to resolve experts than brief

21   after brief after brief on experts.

22        And we could do that.  We could have a hearing.  And

23   now we're talking about springtime in Chicago, which is

24   probably more palatable to you than winter.

25        Anything else, plaintiffs?

1          MS. SRINIVASAN:  Thank you, Your Honor.  No.

2          THE COURT:  Anything from the defense?

3          MS. ABER:  No, Your Honor.  Thank you.

4          THE COURT:  Does anyone in the real world refer to The

5     Salvation Army as "TSA"?

6          MS. ABER:  Yes.

7          MS. JACKSON:  Or "The Army."

8          THE COURT:  It's, frankly for me, a confusing acronym.

9     I'm used to TSA in other contexts.  But, anyway, that's neither

10    here nor there.

11         Thank you for coming in.  I appreciate seeing all of

12    you.  I will talk to you on April 2nd.  Thank you.

13         MS. JACKSON:  Thank you, Your Honor.

14         MS. ABER:  Thank you, Your Honor.

15         MS. SRINIVASAN:  Thank you, Your Honor.

16         THE COURT:  We're in recess.

17      (Proceedings concluded.)

18

19                    *     *     *     *     *

20         I, Colleen M. Conway, do hereby certify that the
      foregoing is a complete, true, and accurate transcript of the
21    Motion/Status Hearing proceedings had in the above-entitled
      case before the HONORABLE MANISH S. SHAH, one of the Judges of
22    said Court, at Chicago, Illinois, on January 22, 2025.

23

        /s/ Colleen M. Conway, CSR, RMR, CRR      02/28/2025
24             Official Court Reporter                Date
              United States District Court
25            Northern District of Illinois
                   Eastern Division