**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MICHAEL CLANCY, STUART LOVE, THOMAS BRYANT, JAMES PETERS, and SAMUEL PATTON, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>    V.<br><br>THE SALVATION ARMY, an Illinois nonprofit corporation,<br><br>        Defendant. | No. 22 CV 1250<br><br>Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

The Salvation Army operates several Adult Rehabilitation Centers across the Midwest. These treatment facilities are attached to thrift stores, and participants in the rehabilitation program are required to work 40 hours per week for the thrift store as part of their treatment—work for which they are not paid wages. Plaintiffs are former enrollees of The Salvation Army's Adult Rehabilitation Centers who argue that they were employees of The Salvation Army. They now seek to represent themselves and all others similarly situated in a class action under Federal Rule of Civil Procedure 23(b)(3) to recover minimum wages mandated under state law. Plaintiffs also seek final certification of a collective action under the Fair Labor Standards Act, 29 U.S.C. § 216(b) for corresponding violations of federal law. For the reasons discussed below, the motion is granted.

## I.    Legal Standards

Plaintiffs bear the burden of showing, by a preponderance of the evidence, that all requirements for class certification under Federal Rule of Civil Procedure 23 are met. *Jacks v. DirectSat USA, LLC*, 118 F.4th 888, 895 (7th Cir. 2024). As a threshold matter, the class must be defined clearly and based on objective criteria; its membership must be definite or ascertainable. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015). All classes must satisfy the four Rule 23(a) requirements: numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a). Plaintiffs seeking to certify a class under Rule 23(b)(3) must also show that common questions predominate over any questions affecting only individual members, and that a class action is superior to other available methods for adjudicating the controversy. *Svoboda v. Amazon.com Inc.*, No. 25-1361, 2025 WL 4632107, at *3 (7th Cir. Mar. 6, 2026). If the classes meet these requirements, "the class *must* be certified, even if it is sure to fail on the merits." *Simpson v. Dart*, 23 F.4th 706, 711 (7th Cir. 2022) (emphasis in original).

## II.    Background

The Salvation Army is a religious denomination and charitable organization. [279] ¶ 1.[1] Defendant here—The Salvation Army, an Illinois nonprofit corporation—

---

[1] Bracketed numbers refer to entries on the district court docket. Page numbers are taken from the CM/ECF header placed at the top of filings. The facts are primarily taken from the parties' responses to the statements of material facts, [279], [294], submitted for the purposes of the pending motion for summary judgment, [256], where both parties' assertions and responses are set forth in the same document. *See Gilmore v. S.W. Bell Mobile Sys., L.L.C.*, 210 F.R.D. 212, 217 (N.D. Ill. 2001) (noting that a court may, within its discretion, "resolve factual issues related to class certification" with "any rational mode of inquiry … including

2

administered, owned the assets, and ran the programs in the Central Territory (Illinois, Indiana, Iowa, Michigan, Minnesota, Missouri, Nebraska, and Wisconsin). [279] ¶¶ 2, 6.

Adult Rehabilitation Centers offered individuals struggling with disaffiliation, such as substance abuse, unemployment, psychiatric issues, and homelessness a drug- and alcohol-free environment, housing, food, clothing, counseling, and 12-step programs at little or no monetary cost. [279] ¶¶ 4–5. Inability to pay for shelter or services was not a reason to turn someone away from an ARC. [279] ¶ 5. The Salvation Army referred to participants or enrollees in ARC programming as beneficiaries. [279] ¶ 3.

The ARC program typically ran 180 days—but sometimes lasted up to 12 months—during which beneficiaries pursued spiritual fulfillment, participated in counseling and classes, and performed "work therapy." [279] ¶¶ 8–15; [294] ¶ 1. Work therapy was the practice of abiding by a work-structured day, with the aim of giving the beneficiary a routine of productive activity and expectations for social behavior. *See* [279] ¶ 68. Beneficiaries were expected to work for up to eight hours a day, five days per week, although plaintiffs assert that beneficiaries were sometimes required to work more than eight hours a day or five days a week. [279] ¶ 76. The Salvation Army did not pay a minimum wage to beneficiaries for their participation in work therapy. [294] ¶ 8.

---

documentary submissions, with or without the precise strictures of summary judgment rules").

The Salvation Army enforced a uniform set of behavioral rules. [279] ¶ 35. These rules included: staying sober; prohibitions on fighting and violent behavior; required participation in all mandatory elements of the ARC program; following a dress code and grooming policy; a curfew; and keeping dormitories clean. [279] ¶ 35. Beneficiaries received the rules during intake procedures, including in a Beneficiary Handbook. [279] ¶ 35; [259-3]. Missing work therapy assignments or leaving work therapy assignments were grounds for dismissal from the ARC program. [259-3] at 7–8.

Plaintiffs enrolled in The Salvation Army's ARC programs between 2019 and 2023. [247] at 22 n.8. After their participation in the ARCs, plaintiffs filed this suit, bringing claims for violations of the Fair Labor Standards Act, the Illinois Minimum Wage Law, Michigan Workforce Opportunity Wage Act, and Wisconsin law, for failure to pay minimum wage and overtime.[2] [160] (second amended complaint). Upon the parties' joint motion, I conditionally certified a collective action under the Fair Labor Standards Act, 29 U.S.C. § 216(b), and approved a notice plan. [108]. Plaintiffs now seek class certification under Fed. R. Civ. P. 23(b)(3), and final certification of collective action under the Fair Labor Standards Act. [246].

## III. Analysis

### A. Class Action Certification

Plaintiffs propose certifying three classes:

1. Illinois Class: All persons enrolled in any Salvation Army Adult Rehabilitation Center in Illinois between March 9, 2019, and the date of

---

[2] Overtime claims are only brought on behalf of the named plaintiffs, not the putative class.

final judgment for more than seven days, who did not or will not enroll in the program to comply with a court order or as a condition of probation, parole, or community supervision.

2. Michigan Class: All persons enrolled in any Salvation Army Adult Rehabilitation Center in Michigan between March 9, 2019, and the date of final judgment for more than seven days, who did not or will not enroll in the program to comply with a court order or as a condition of probation, parole, or community supervision.

3. Wisconsin Class: All persons enrolled in any Salvation Army Adult Rehabilitation Center in Wisconsin between March 9, 2020, and the date of final judgment for more than seven days, who did not or will not enroll in the program to comply with a court order or as a condition of probation, parole, or community supervision.

I consider each requirement of Rule 23 in turn.

### 1. *Ascertainability*

The Salvation Army's central argument against certification is that the class membership is not ascertainable. *See* [268] at 19–30. Classes must "be defined clearly and based on objective criteria." *Mullins*, 795 F.3d at 659. The inquiry focuses on the adequacy of the class definition itself, and not whether it would be difficult to identify particular members of the class. *Id. But see Carrera v. Bayer Corp.*, 727 F.3d 300, 306–07 (3d Cir. 2013) (adopting a rigorous approach to ascertainability).

There are three main ways class definitions fail the ascertainability requirement: being too vague, being defined by subjective criteria, and being defined in terms of success on the merits. *Mullins*, 795 F.3d at 659–60. "To avoid vagueness, class definitions generally need to identify a particular group, harmed during a particular time frame, in a particular location, in a particular way." *Id.* at 660. "[C]lasses that are defined by subjective criteria, such as by a person's state of mind,

5

fail the objectivity requirement." *Id.* Finally, "fail-safe classes" are not properly defined. *Id.*

The Salvation Army argues that defining the classes in terms of a person's reason for enrolling in the ARC Program is subjective. [268] at 19–24. The proposed class definitions exclude individuals who enrolled in an Adult Rehabilitation Center "to comply with a court order." [246] at 1–2. Identifying individuals by their reason for enrolling in the program, The Salvation Army contends, "would require individualized fact-finding and legal determinations," including their subjective intent. [268] at 21–22. The issue can be avoided entirely, however, by refining the class definition. *See Messner v. Northshore U. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012).

Changing "who did not or will not enroll in the program to comply with a court order or as a condition of probation, parole, or community supervision" to "who were not ordered by a court or required as a condition of probation, parole, or community supervision to enroll in the program" solves the subjectivity problem. The subjective intent of the class members is in any event irrelevant to the merits of the underlying claims. Issues of identifying specific class members are generally not appropriate for the "weak" version of ascertainability followed in this circuit. *See Mullins*, 795 F.3d at 659. The Salvation Army asserts that its records are inadequate to reliably identify and exclude justice-referred beneficiaries, [268] at 22, but whether a beneficiary was subject to a court order obligating their enrollment is a clear and objective criterion—that suffices.

6

The Salvation Army argues that the class definition cannot include individuals without standing to maintain the action on their own behalf. [268] at 20. Not so. "Every class member must have Article III standing in order to recover individual damages." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). But neither the Supreme Court nor the court of appeals requires every class member to demonstrate standing before a court certifies a class under 23(b)(3). *See id.* at 431 n.4; *Arandell Corp. v. Xcel Energy Inc.*, 149 F.4th 883, 898 (7th Cir. 2025) ("To the extent the defendants suggest that before class certification, the plaintiffs must show all class members suffered some injury, that is not correct."). So long as it is not apparent that the class contains "a great many persons who have suffered no injury at the hands of the defendant," the presence of some uninjured class members does not create a Rule 23 problem. *Kohen v. Pacific Inv. Mgt. Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009); *see also Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014) ("How many (if any) of the class members have a valid claim is the issue to be determined *after* the class is certified.").[3]

The proposed class does not "include a great number of members who for some reason could not have been harmed by the defendant's allegedly unlawful conduct." *Messner*, 669 F.3d at 824. Even if it did, the solution would be to refine the class definition, not deny certification for lack of ascertainability. *Id.* at 825. The cases cited by The Salvation Army buttress this point, as they deal with the uninjured class

---

[3] For jurisdictional purposes, "as long as one member of a certified class has a plausible claim to have suffered damages, the requirement of standing is satisfied." *Kohen*, 571 F.3d at 676.

7

members causing a Rule 23(a) requirement to go unmet. *See Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (class representative's claims were atypical of class members because her claim lacked the same essential characteristics as the class at large); *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 776 (7th Cir. 2013) (variance between class members' damages made trial plan infeasible); *McGlenn v. Driveline Retail Merchandising, Inc.*, No. 18-CV-2097, 2021 WL 165121 at *5–6 (C.D. Ill. Jan. 19, 2021) (individualized issues of causation, injury, and damages defeated commonality).[4] The class is ascertainable from the revised definitions.

### 2. *Numerosity*

To maintain a class action, the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While there is no strict numerosity threshold, a class of over 40 members raises a presumption of impracticability. *Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 859 (7th Cir. 2017) ("While there is no magic number that applies to every case, a forty-member class is often regarded as sufficient to meet the numerosity requirement."). Here, the putative classes number 3,000 in Illinois, 3,500 in Michigan, and 450 in Wisconsin. [247] at 42. The numerosity requirement is met.

---

[4] The Salvation Army also cites *Panwar v. Access Therapies, Inc.*, No. 1:12-CV-00619-TWP, 2015 WL 329013 at *4 (S.D. Ind. Jan. 22, 2015), but the court there found the ascertainability requirement unmet because the class definition included individuals who were paid their contractual wage for time worked, meaning too many class members were not damaged at all. The Salvation Army does not claim to have paid any beneficiaries a wage.

### 3.    *Commonality*

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) (citing *Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 157 (1982)). What matters is not the raising of common questions, but rather the ability to generate common answers. *Id.* at 350. It is not enough for all the putative class members' claims to raise the common issue of whether they were employed by the Salvation Army—common evidence must be able to resolve that issue en masse.

The three proposed classes are state-based, and so state-law standards for employment status apply (specifically, Illinois, Michigan, and Wisconsin law). The parties agree that the Fair Labor Standards Act, the Illinois Minimum Wage Law, and the Michigan Workforce Opportunity and Wage Act all apply the same analysis for employment relationship. [247] at 47 n.15; [257] at 61; *see also Callahan v. City of Chicago*, 78 F.Supp.3d 791, 821 (N.D. Ill. 2015), aff'd, 813 F.3d 658 (7th Cir. 2016); *Allen v. Lincare Inc.*, No. 16-CV-11996, 2018 WL 352362, at *8 n.2 (E.D. Mich. Jan. 10, 2018) (citing *Dikker v. 5-Star Team Leasing*, 243 F.Supp.3d 844, 854 n.3 (W.D. Mich. 2017)). For both the Illinois and Michigan classes, the "economic reality of the working relationship" determines whether the putative class members qualify as employees. *Brant v. Schneider Nat'l, Inc.*, 43 F.4th 656, 665 (7th Cir. 2022). The definitions of employer and employee are distinct under federal and Wisconsin law, however. *Id.* at 673. Under Wisconsin law, an entity is an employer when it exercises

control over the manner and conduct of work performed by an individual. *Id.* at 674; *see* Wis. Stat. § 104.01(3)(a).[5]

Class-wide adjudication is likely to generate common answers to the question of participants' employment status. Plaintiffs allege that The Salvation Army engaged in a standardized course of conduct across its Adult Rehabilitation Centers, and that included work therapy. The Salvation Army relies on its national policies when arguing that participants were not employees, which suggests that it believes the legal question of employment status is one that can be resolved for all class members at once. *See generally* [257] (The Salvation Army's memorandum in support of its motion for summary judgment).

That the plaintiffs have presented testimony from individual beneficiaries does not make the inquiries individualized. Testimony from individuals can contribute to establishing evidence of standardized conduct toward all members of the proposed class. The statements of opt-in plaintiffs regarding their understanding of work expectations and the possibility of discharge, examples of beneficiaries being discharged for failing to perform work therapy, testimony that benefits were made contingent upon completing work therapy, and anecdotes of times plaintiffs were required to make up missed work therapy are evidence of The Salvation Army's actual work expectations and discharge practices. *See* [268] at 27–29 (defendant

---

[5] The Salvation Army suggests that the control test under Wisconsin law is limited to independent contractor cases. [257] at 62 n.40. Although *Brant* is a case about an independent contractor dispute, it interpreted the Wisconsin minimum-wage statute based on its generally applicable text.

listing examples of individual evidence). That individual evidence may combine to provide an answer to a common question does not suggest an absence of commonality. Whether the common questions predominate over individual ones is a separate inquiry. *Dukes*, 564 U.S. at 359; *see below*, Section III.A.5.

*Dukes* does not stand for the position that these issues are not appropriate for class treatment. The class representatives in *Dukes* sought to represent approximately one and a half million current and former female Wal-Mart employees for claims alleging sex discrimination in pay and promotion practices. *Id.* at 342. The only corporate policy plaintiffs identified in *Dukes* was one allowing discretion to local supervisors, which was not sufficient to yield common answers as to whether individual class members were discriminated against. *Id.* at 344–45. Here, by contrast, answering the question of employment status—given that it is undisputed no participants were paid—would be sufficient to answer whether there were minimum wage violations for all class members.

*Dukes* also does not reject the use of individual evidence to establish the existence of a pattern or practice of wrongdoing. The Court rejected that "anecdotal reports of discrimination from about 120 of Wal-Mart's female employees," as well as statistical evidence, could support a conclusion that Wal-Mart's managers exercised their discretion in the same way. *Id.* at 346. There was no common practice that the anecdotes supported, particularly for the size and scope of Wal-Mart's business. That is not the case here. The individual testimony provided can serve as proof of The Salvation Army's expectations and practices for its work therapy program.

While the specifics of the work plaintiffs performed while enrolled in the ARCs may vary slightly, the fundamental bargain was the same: enrollees worked for 40 hours per week, The Salvation Army received the benefits of that work, and the enrollees received the benefits of the ARC. The Salvation Army provides a regimented and standardized program across its ARCs, and the record indicates that the economic reality of participating in work therapy is the same from location to location and from plaintiff to plaintiff. The Salvation Army also exercises control over the work performed in a similarly consistent manner. I do not yet make any findings about whether that arrangement qualifies as an employment relationship under either applicable standard, but the answer is likely to be the same for all class members. That is sufficient to establish "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).

### 4. *Typicality and Adequacy*

For the final two Rule 23(a) requirements, plaintiffs must show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class," and "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). As both sides acknowledge, the requirements of typicality and adequacy tend to merge into one. [268] at 36; [286] at 37. Those two also tend to overlap heavily with the commonality requirement. *Dukes*, 564 U.S. at 349 n.5.

Typicality and adequacy are satisfied here. The named plaintiffs are each former ARC enrollees who participated in work therapy and were not paid a minimum wage for the hours they worked. Plaintiffs concede that the class

12

membership should be limited to those who performed work for The Salvation Army and propose achieving that end by eliminating from the class all people who did not make it through the ARC program's origination period, which lasts between one and seven days. [286] at 16–17. Almost all participants begin work therapy within a week of enrollment. [269-7] at 6. With that modification, the named plaintiffs allege the same injury as all putative class members, and their claims are typical of the class. There are no concerns about competency of class counsel or "conflicts of interest between named parties and the class they seek to represent" that undermine the adequacy of the putative class representatives or their counsel. *In re Southwest Airlines Voucher Litig.*, 799 F.3d 701, 714–15 (7th Cir. 2015). All Rule 23(a) requirements are satisfied.

### 5.    *Predominance and Superiority*

Once an ascertainable class has been defined and all Rule 23(a) requirements have been met, plaintiffs must still satisfy one of the three Rule 23(b) categories—in this case, Rule 23(b)(3). Accordingly, plaintiffs must show "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"To determine 'which issues are common, individual, and predominant,' the court must 'circumscribe the claims and break them down into their constituent elements.'" *Eddlemon v. Bradley Univ.*, 65 F.4th 335, 339 (7th Cir. 2023) (quoting

13

*Santiago v. City of Chicago*, 19 F.4th 1010, 1018 (7th Cir. 2021)) (cleaned up). For all three classes, plaintiffs allege violations of state minimum wage laws.

To establish a minimum wage claim under Illinois and Michigan law (using the test under the FLSA), a plaintiff must show that "he was an employee within the meaning of the Act and that he was underpaid for at least one workweek." *Brant*, 43 F.4th at 664. While the definition of "employee" may differ under Wisconsin law, the elements of a minimum wage claim do not—a plaintiff must show "that he was an employee protected by these state minimum wage provisions and that he was not paid the Wisconsin minimum wage during at least one workweek." *Id.* at 673.

The parties do not contest the second element—the plaintiff was not paid a minimum wage. No participants were paid for their work, although The Salvation Army may be entitled to offsets for the cost of food and housing. The sole issue with which plaintiffs' minimum wage claims will rise and fall is whether they qualify as employees under state law. As discussed for the commonality requirement, employment status is a common issue, not an individual issue. Given that "the entire class will 'prevail or fail in unison' on common questions related to" one alleged course of conduct, that common question predominates. *Svoboda v. Amazon.com Inc.*, No. 25-1361, 2025 WL 4632107, at *6 (7th Cir. Mar. 6, 2026) (quoting *Amgen Inc. v. Connecticut Ret. Plans and Tr. Funds*, 568 U.S. 455, 460 (2013)).

The Salvation Army contends that predominance is not satisfied unless there exists a method for determining damages through classwide proof. [268] at 37. But there is nothing improper about separate liability and damages phases. *See Butler v.*

14

*Sears, Roebuck and Co.*, 727 F.3d 796, 800 (7th Cir. 2013). *Comcast* does not require damages to always be capable of measurement on a class-wide basis; it requires plaintiffs to have a methodology to avoid individual calculations that "inevitably overwhelm questions common to the class." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013).

The common questions here, which predominate over individualized issues, surround participants' employment status. Once established, damages do not require complicated expert testimony—just multiplying hours worked by the applicable minimum wage. Determining the hours worked by an ARC participant is necessarily an individual question but, given the common requirement of full-time work therapy, is unlikely to be more time and resource intensive than resolving the common questions. Offsets, which are limited to the cost of fair value of "board, lodging, or other facilities," can also be established without overwhelming the common questions. No such offsets exist under Michigan law, making the case for predominance even stronger for that class. The Salvation Army argues that individualized inquiries into the subjective value putative class members attribute to their participation in the ARC will be necessary and destroy predominance, but it cites no authority to support its position that such offsets are appropriate or available. *See* [268] at 39. The individual testimony that plaintiffs rely on are also not simply "anecdotes" that destroy predominance but are more akin to circumstantial evidence of a common practice.

The other requirement of Rule 23(b)(3), superiority, requires a class action to be "the most practical and efficient way to resolve the litigation." *Jacks*, 118 F.4th at 898. There is nothing inherently impermissible about litigating state minimum wage law claims as a class action. *See Ervin v. OS Restaurant Services*, 632 F.3d 971, 976–79 (7th Cir. 2011) (state-law class action can be a superior means of adjudicating minimum wage disputes); *Espenscheid*, 705 F.3d at 772 ("Simplification is desirable in law, especially in the present context, because joining a collective action and a class action or actions in one suit, as in this case, is both common and, we have held, permissible."). When there are many common issues of law and fact, "the superiority requirement likely poses no serious obstacle to class certification." *Messner*, 669 F.3d at 815 n.5 (7th Cir. 2012). Other factors, "including the lack of awareness of a claim, inability to access an attorney, or complex, costly discovery," can all also contribute to a finding that a class action is superior to other available methods. *Svoboda v. Amazon.com Inc.*, No. 25-1361, 2025 WL 4632107, at *8 (7th Cir. Mar. 6, 2026).

Because the central and common question of employment status predominates over any individual issues, not much else is needed to satisfy the superiority requirement. But there is more. Enrollees in The Salvation Army's ARCs are a vulnerable population, more likely to lack awareness of any possible claim, and less likely to have access to legal services. The benefits of individual adjudication are minimal, while the benefits of resolving this dispute as a class are great. A class action is superior to other available methods. The requirements of Rule 23(b)(3) are satisfied.

16

To avoid repeated disputes over class membership, and, if necessary, avoid protracted damages proceedings, the classes should be defined by a fixed time period now. For those reasons, the classes are closed as of the date of this order certifying the classes.

### B. Collective Action Certification

In addition to class certification under Rule 23, plaintiffs seek final certification for a collective action under the Fair Labor Standards Act. The proposed collective action includes: "All persons enrolled in any Salvation Army Adult Rehabilitation Center from September 20, 2019 to September 11, 2023, for more than seven days, who did not enroll in the program to comply with a court order or as a condition of probation, parole, or community supervision."

"[A]n FLSA collective action tracks with a mass action—and is quite unlike a class action." *Vanegas v. Signet Builders, Inc.*, 113 F.4th 718, 724 (7th Cir. 2024). Despite the differences, "there isn't a good reason to have different standards for the certification of the two different types of action, and the case law has largely merged the standards, though with some terminological differences." *Espenscheid*, 705 F.3d at 772.

The Salvation Army's arguments against final certification of the collective echo their arguments against class certification. *See* [268] at 45–46. But some differences among employees in a collective are permissible so long as they do not result in detailed, fact-bound inquiries and common questions still predominate. *Alvarez v. City of Chicago*, 605 F.3d 445, 449 (7th Cir. 2010). Both sides agree that the requirements for certification under Rule 23 are more rigorous than for a

collective action under the Fair Labor Standards Act. *See* [247] at 59 (plaintiff noting "the standard for certifying a collective under Section 216(b) is less demanding than the standard for certifying a class action under Rule 23"); [268] at 45 (defendant noting that "the certification standard under Rule 23 is more rigorous than for collective certification"); *see also Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 452 (2016) (assuming, without deciding, that the standard for collective action certification is no more stringent than class action certification, when not disputed by the parties). Since certification of a class action under Rule 23 is required, final certification of the collective is appropriate.

## IV.    Conclusion

The plaintiffs' motion for class certification, [246], is granted. I certify the following classes:

> All persons enrolled for more than seven days in any Salvation Army Adult Rehabilitation Center in Illinois between March 9, 2019, and the date of class certification, who were not ordered by a court or required as a condition of probation, parole, or community supervision to enroll in the program.

> All persons enrolled for more than seven days in any Salvation Army Adult Rehabilitation Center in Michigan between March 9, 2019, and the date of class certification, who were not ordered by a court or required as a condition of probation, parole, or community supervision to enroll in the program.

> All persons enrolled for more than seven days in any Salvation Army Adult Rehabilitation Center in Wisconsin between March 9, 2020, and the date class certification, who were not ordered by a court or required as a condition of probation, parole, or community supervision to enroll in the program.

Plaintiff Michael Clancy is designated as class representative for the Illinois Class. Plaintiffs James Peters and Thomas Bryant are designated as class

representatives for the Michigan Class. Plaintiff Samuel Patton is designated as class representative for the Wisconsin Class.[6] I appoint attorneys Christine E. Webber, Joseph M. Sellers, Harini Srinivasan, Rebecca A. Ojserkis, and Michael Hancock (Cohen Milstein Sellers & Toll PLLC), Gay Grunfeld and Michael Freedman (Rosen Bien Galvan & Grunfeld LLP), and Jessica Riggin (Rukin Hyland & Riggin LLP) as class counsel.

The plaintiffs' motion for final certification of collective action under the Fair Labor Standards Act, [246], is granted. I certify the following collective:

> All persons enrolled for more than seven days in any Salvation Army Adult Rehabilitation Center in Illinois, Indiana, Iowa, Kansas, Michigan, Minnesota, Nebraska, North Dakota, South Dakota, or Wisconsin from September 20, 2019, to September 11, 2023, who were not ordered by a court or required as a condition of probation, parole, or community supervision to enroll in the program.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: March 26, 2026

---

[6] Named plaintiff Stuart Love attended an ARC in Missouri and is not a part of any class. *See* [247-51]. Love remains a plaintiff for the federal claims. *See* [160].